THE GAR CREEK DRAINAGE DISTRICT, Appellee, *vs.* FRED
WAGNER *et al.* Appellants.

*Opinion filed December 17, 1912.*

1. DRAINAGE—*what constitutes a connection with ditches of a
district.* To constitute a connection, within the meaning of section 58 of the Levee act, it is not required that each owner shall
dig a ditch from his own land to the ditches of the district, and
if an owner of land adjoining the district makes a ditch leading
from his land to, and draining the water therefrom into, the district ditches, and other land owners construct ditches on their
lands connecting therewith so as to form a continuous line through
which the waters from the said lands are drained into the district
ditches, there is a connection within the meaning of the statute.

2. SAME—*one owner cannot subject lands of others to inclusion in district.* One land owner cannot, by connecting with the
district drains a ditch from his own land, which carries water
coming from the lands of others who have done nothing to connect their drains with the district, subject the lands of such owners to inclusion in the district.

3. SAME—*what does not constitute connection within meaning
of statute.* If there is a natural water-course through lands, into
which they are drained and through which the waters from such
lands ultimately find their way into the ditches of the district, such
condition does not constitute a connection, within the meaning of
section 58 of the Levee act.

4. SAME—*section 58 of Levee act does not require both connection and benefits.* Section 58 of the Levee act, concerning the
annexation of lands to a district, which provides that lands shall
be deemed to have made voluntary application to be included in
the district where the owners thereof have connected them with
the drains of the district *or* where the lands are or will be benefited by the work of the district, does not require that there shall
be both connection and benefits; and if there is connection within the meaning of the statute, it is unnecessary to prove that the
lands so connected are or will be benefited.

5. STATUTES—*when the word "and" will not be substituted for
"or."* While the word "and" is sometimes substituted for "or" in
the construction of statutes or contracts or wills, to effectuate the
intention, yet this will not be done unless it is necessary to prevent an absurdity or unreasonable result.

CARTWRIGHT and COOKE, JJ., dissenting.

APPEAL from the County Court of Kankakee county; the Hon. A. W. DESELM, Judge, presiding.

COOPER & HOBBIE, and RAY, DOBBINS & DOBBINS, for appellants.

J. BERT. MILLER, W. H. SAVARY, and A. E. SMITH, for appellee.

Per CURIAM: Gar Creek Drainage District was organized under the Levee act in 1883, and a ditch constructed from Gar creek, the outlet, west to a bridge on a public highway, called the Lempke bridge. At that point it connected with a ditch already in existence. The work of constructing the ditch cost about $4000 and was completed in 1884. The upper end of the ditch was two miles east of the west boundary of the district. No work appears to have been done by the commissioners of the district after the completion of the ditch, in 1884. The ditch connecting with the ditch constructed by the commissioners, at the Lempke bridge ran south about a mile and a half, then westerly to a north and south public highway which was inside the district, the west line of the highway at that point being the boundary line of the district. At that point, which is very near the south-west corner of the district, there is a bridge in the highway, called the Schierholz bridge. In January, 1912, the commissioners of the Gar Creek Drainage District began proceedings in the county court of Kankakee county, under the statute, for the annexation of about nine thousand acres of land lying west and south-westerly of the district. The complaint set out the organization of Gar Creek Drainage District and the cost of the work done, and alleged that in June, 1911, the county court had made an order for the repair of the drainage system of the district by deepening, widening and extending the main ditch, repairing levees, deepening and

widening the southern extension of the main ditch from the Lempke bridge to the south-west corner of the district, and replacing certain open ditches with tile drains, the cost of which, the order of the county court recited, would be $49,598.06; that when completed the proposed work would adequately drain all lands of the district and be sufficient to receive all waters therein from lands outside the district. The complaint alleged that the owners of the lands described outside the district had connected their lands either by tile drains or open ditches, forming a continuous line and branches with the drains of the district; that the said lands have been benefited by the work of the district and will receive additional benefits from the proposed work under the order of June, 1911, and that by connecting their drains with the drains of the district said land owners voluntarily applied to be included in the district. The complaint prayed that a date be fixed for a hearing, and that a judgment be entered annexing the described lands to and making them part of Gar Creek Drainage District. Frank Peters, one of said land owners, filed an answer denying the connection of his land with the drains of the district, denying that his land had been or would be benefited by the work done or proposed to be done in the district, and setting up the five year and twenty year Statutes of Limitation, and also a right of drainage by twenty years' user. By stipulation the answer of Peters was adopted by each of the other land owners. A trial was had by jury. By their verdict the jury found that the lands sought to be annexed lying south of the public highway running east and west on the north line of sections 28, 29 and 30 of township 30, north, range 14, east, and section 30 of township 30, north, range 11, east, had not been connected with the drainage of the district, had not been benefited by the work done and would not be by the proposed work. As to all the lands north of said highway, except a few tracts as to which the complaint was dismissed, the jury found

they had been benefited by the work done in the district, would be benefited by the work proposed to be done, and that the owners had connected them with the drains of the district. Twenty-seven land owners have joined in the prosecution of this appeal.

Section 58 of the Levee act (Hurd's Stat. 1911, p. 893,) provides that "any land lying outside of the drainage district as organized, the owner or owners of which shall thereafter make connection with the main ditch or drain or with any ditch or drain within the district as organized or whose lands are or will be benefited by the work of such district, shall be deemed to have made voluntary application to be included in such drainage district; and thereupon the commissioners shall make complaint in writing, setting forth a description of such land or lands, benefited, and amount of benefits; the name of the owner or owners thereof, also, a description of the drain or ditch making connection with the ditches of such district, as near as may be; and file said complaint in the county court or before a justice of the peace," etc.

The questions of fact whether the appellants had made connection with any ditch or drain in the district, and whether their lands have been or will be benefited by the work of the district, were answered by the jury in the affirmative, and the appellants insist that the verdict is not sustained by the evidence. The substance of the evidence in support of the allegation that the appellants had connected their lands with the district was as follows:

When the district was organized, in 1883, a ditch, designated in the record as ditch "A," was constructed from Gar creek across sections 12 and 11 to Lempke's bridge. At that time there was a ditch, called ditch "B," extending south and west to the south-western boundary of the district to the highway at Schierholz bridge. West of Schierholz bridge there are two ditches,—one running in a northwesterly direction across the Herscher and Trombly lands

to the highway on the north side of section 21, and thence west along said highway to the western edge of the territory sought to be annexed. This is designated as ditch "C" in the record, and it and ditch "D," which extends from Schierholz bridge south-westerly across section 21 and the south-eastern part of section 20, are the ditches which appellee claims have been constructed by appellants and connected with the ditches of the district. The testimony shows that in 1883 there was an irregular swale or depression across what is now the Herscher land. In 1888 ditch "C" was constructed across this tract of land, and later was extended across the Trombly land to the highway. In constructing this part of ditch "C" a portion of the depression or swale was followed, but the greater part of it was an entirely new ditch. There seems to have been either no ditch, or a small one, along the highway at this time, but since then the land owners have at different times opened one up, cleaned it out and deepened it at places. The lands of appellants along this ditch are drained into it by surface ditches or tile drains. Practically all the ditching has been done since the organization of the drainage district and all the tile has been laid within the last fifteen years. Ditch "D" has been constructed since 1883. In some places its course follows a natural depression along which the water flowed, but most of it is a new ditch. Work has been done along practically its entire course over the lands of appellants, the ditch widened and deepened, which, with the action of the water, has made a channel large enough to drain all the lands connecting with it. Ditch "E" is along the public highway on the north side of sections 16 and 17 and runs east into the drainage district and connects with ditch "A." This ditch was constructed in 1878, before the organization of the district, but during the past few years has frequently been cleaned out and deepened in places. It drains the land of appellant Fred Wagner, with which it is connected by an open ditch

and a tile drain.  The open ditch was made prior to 1883 but the tile has been laid since that time.  Appellants Walter S. and Richard Vanderwater have tiles connecting with this ditch at or near the place it enters the district, and it furnishes an outlet for the drainage of their land.

From a consideration of all the evidence we are unable to say the finding of the jury that appellants have connected their lands with the drains of the district was not warranted by the proof.  In fact, it appears to us the weight of the testimony supports the finding.  To constitute a connection within the meaning of the statute it is not required that each land owner should dig a ditch from his land to the ditches in the district.  If an owner of land adjoining the district makes a ditch leading from his land to and draining the water therefrom into the district ditch, and other land owners construct ditches on their lands connecting therewith so as to form a continuous line through which the waters from the said lands are drained into the district ditches, this is a connection within the meaning of the statute.  One land owner could not, by connecting with the district drains a ditch from his land which carries water coming from the lands of others who had done no act to connect their drains with the district, subject the land of such other owners to be included in the district. (*Dayton* v. *Drainage Comrs.* 128 Ill. 271.)  Here, however, there was proof that appellants had done work in the construction of the ditches which formed continuous lines connecting with and discharging the water from their lands into the district ditch, after the organization of the district.  Undoubtedly, if there had been natural watercourses through appellants' lands into which they drained them and through which the waters ultimately found their way into the district ditches, it would not constitute a connection within the meaning of the statute.  But such was not the case made by the proof here.

On the question of benefits the evidence was conflict-
ing, and it is unnecessary, in view of our conclusion on
the other issue, to consider it.    The court instructed the
jury substantially that if any land owner had connected his
drains with any ditch or drain in the district, directly or
indirectly, he would be deemed to have made voluntary
application to have his lands included in the district, and
such application must be treated as an admission on his
part that his land is benefited by the connection.    If, there-
fore, it was necessary to prove both connection and bene-
fits this instruction was erroneous.    If it was not neces-
sary, then what has been said on the question of connection
with the drains of the district is sufficient.

The appellants insist that both connection and benefits
must be proved.    The statute, on its face, does not require
this.    Its language is in the alternative, applying to lands
whose owners shall make connection with the district
ditches, or to lands which are or will be benefited by the
work of the district.    It certainly was within the power
of the legislature to provide that the existence of either
of these conditions should constitute a voluntary applica-
tion to be included in the district.    No constitutional rea-
son is suggested why this may not be done.    If it was the
intention of the legislature to do it,—to provide that land
which is either connected or benefited shall be deemed to
have made voluntary application to be included in the dis-
trict,—no language more apt could have been used to ex-
press such intention.    That is the ordinary, plain and un-
ambiguous meaning of the terms used.    Where there is no
ambiguity there is no room for construction.    "It is not
allowable to interpret what has no need of interpretation,
and, when words have a definite and precise meaning, to
go elsewhere in search of conjecture in order to restrict or
extend the meaning.    Statutes and contracts should be read
and understood according to the natural and most obvious
import of the language, without resorting to subtle and

forced construction for the purpose of either limiting or extending their operation.  *  *  *  The question in this and other cases of construction of written instruments is, not what was the intention of the parties, but what is the meaning of the words they have used." (*City of Beardstown* v. *City of Virginia,* 76 Ill. 34.) It is true that the word "and" is sometimes substituted for "or" in the construction of statutes or contracts or wills to effectuate the intention of the parties, but it is only in cases where the intention is clearly manifested and it is apparent that to construe the word according to its real meaning would involve an absurdity or produce an unreasonable result. An example of this is found in the case of *Boyles* v. *McMurphy,* 55 Ill. 236, where the court construed the effect of a widow's renunciation of her husband's will under section 11 of chapter 34 of the Revised Statutes of 1845. Section 10 provided what devises should bar dower, and declared that the widow might, if she chose, renounce the devise "and take her dower in the lands and her share in the personal estate of her husband." Section 11 prescribed the time and manner of renunciation, and ended with the statement that "by thus renouncing all claims, as aforesaid, such widow shall thereupon be entitled to dower in the lands, or share in the personal estate of her husband." It was held to be the clear intention, construing the sections together, that the widow renouncing should have both the dower and the share in the personal estate. The intention of the legislature on the whole act was clear to give both provisions, and it was apparent that the substitution, in section 11, of "or" for "and" was not in accordance with that intention. This is no such case. There is nothing to indicate that the legislature has not used exactly the language it intended. There is nothing absurd or unreasonable or subversive of the legislative intention in giving this language its ordinary meaning. It is true that the act requires the petition for the original formation of a district

to be signed by a majority of the adult land owners in the territory owning one-third of the land or by one-third of the owners owning the greater part of the land. But section 1, which required the signature of a majority of the land owners owning one-third of the land, was a part of the original act, passed in 1879. Section 58 was not a part of the act of 1879, which contained no provision for adding land to the district, but was added by the revision of the Drainage law, which took place six years later, in 1885. It is to be presumed that the legislature of 1885 knew how to express, and did express by the language they used, their real intention in regard to the annexation of land outside of a district already organized and the conditions under which it should be permitted. They were not bound by the intentions or enactments of any preceding legislature. In fact, it was no more the intention that districts should be organized only upon the petition of a fixed proportion of the land owners than it was the intention that when organized they should include all the lands benefited, and it was entirely natural and to be expected that the legislature, when considering the situation of a district organized without including all the land benefited, should determine to confer authority upon such districts to annex lands benefited without the requirement of any petition whatever, or any other fact than that they were benefited. The legislature chose its language, and enacted that lands should be deemed to have made voluntary application to be included in the drainage district either where the owners had connected their drains with those of the district or where the lands themselves were benefited. In 1885 section 59 was also added to the act, and it was amended in 1909. It provides for the formation of sub-districts where particular localities in the district require more minute drainage, and for the construction of additional drains in such sub-districts by special assessment upon the land owners. By the amendment of 1909 the

same provision for annexing lands to the sub-district was added as is found in section 58 for annexing lands to the district. The legislature of 1909 used the same language as that of 1885. This particular language was deliberately adopted by two legislatures, and we see no reason why the act should not be enforced as it is written.

The Farm Drainage act provides that if the individual owners of land outside the district connect with the ditches of the district already made, they shall be deemed to have voluntarily applied to be included in the district. In *People* v. *Wildcat Drainage District*, 181 Ill. 177, certain land owners sought to oust the district from jurisdiction over their lands which they had connected with the drains of the district. It was held that the mere fact that the land owners had the right to discharge the waters from their land upon the lands in the district below them, gave them no right by artificial means to turn such waters into the ditches dug by the district without assuming the burdens imposed by the statute. The jury having found that the owners had connected their lands with the district ditches, they could not be heard to say, in order to avoid the annexation of the lands to the district, that such lands were not benefited. While the Farm Drainage act and the Levee act constitute entirely distinct codes of procedure for the formation and management of drainage districts, yet the legal principles which control the one are not different from those which control the other in a like situation. The connection of drains is declared to be a voluntary application for annexation in the one case, and the question of benefits is immaterial. The connection of drains is declared to be a voluntary application for annexation in the other case, and the question of benefits is equally immaterial unless the statute makes it material, and we have seen that it does not.

The seventh instruction for the appellee, the giving of which is complained of by the appellants, we think was

applicable under the evidence in this case and contained a substantially correct statement of the law. In substance, the instruction stated that if a land owner enlarges or deepens any ditch already existing on his own land or constructs any new ditch for the purpose of draining into the district ditches, and connects his ditches so constructed, enlarged or deepened with any ditch in an organized district, or if any land owner connects his ditches with the ditches so constructed, enlarged or deepened by another and connected with the district so as to form a continuous line for an outlet into the district ditch, this would be a connection and deemed a voluntary application of the owners to be included in the district. *People* v. *Drainage District,* 155 Ill. 45.

Neither the Statute of Limitations nor right by prescription is applicable in a proceeding of this character.

The judgment of the county court is affirmed.

*Judgment affirmed.*

CARTWRIGHT and COOKE, JJ., dissenting.