The Sangamon and Drummer Drainage District, Ap-. pellee, *vs.* A. H. Eminger *et al.* Appellants.

*Opinion filed February 20, 1913.*

1. Jurisdiction—*county court first acquiring jurisdiction of a drainage proceeding retains it.* Where a petition is filed in the county court to annex to a drainage district organized therein, lands lying in another county, and the court duly acquires jurisdiction of the persons of the parties interested, such court may retain jurisdiction to proceed to a final determination of the case, and it cannot be deprived of jurisdiction by a subsequent proceeding in the county court of the other county to organize the lands in question into a separate district.

2. Drainage—*lands benefited may be annexed to district under section 58 of the Levee act.* Under section 58 of the Levee act lands benefited by the work of the district may be annexed to the district even though they have not previously been connected by ditches with the ditches and drains of the district. (*Gar Creek Drainage District* v. *Wagner,* 256 Ill. 338, followed.)

Cooke and Cartwright, JJ., dissenting.

Appeal from the County Court of Champaign county; the Hon. W. G. Spurgin, Judge, presiding.

A. L. Phillips, and Cloud & Thompson, for appellants.

Ray, Dobbins & Dobbins, and L. A. Cranston, for appellee.

Per Curiam: This is an appeal from an order of the county court of Champaign county annexing appellants' lands to the Sangamon and Drummer Drainage District. This district was organized in the county court of Champaign county in September, 1908. At that time appellants' lands were included in the Drummer Creek Drainage District, lying wholly in Ford county, but the order of the county court organizing the latter district was afterward reversed for the reason that the county court had never obtained jurisdiction to make the order. (*Drummer Creek*

*Drainage District* v. *Roth*, 244 Ill. 68.)    Proceedings were
then begun in the county court of Ford county to annex
the lands of the appellants to the appellee district and an
order of annexation was made.    In *quo warranto* proceed-
ings subsequently prosecuted by the appellants this order
was held void on the ground that the county court of Ford
county was without jurisdiction.    (*People* v. *Sangamon
and Drummer Drainage District*, 253 Ill. 332.)    Immedi-
ately afterward, on February 29, 1912, the appellee filed a
petition in the county court of Champaign county to annex
the lands of the appellants.    Affidavits of non-residence
were filed and notices published, mailed and posted as re-
quired by law, all on or before March 4, and the hearing
on the application was set for March 23.    On March 20
the appellants filed their petition in the county court of
Ford county for the organization of their own lands into
the South Drummer Drainage District.    All notices re-
quired by law were waived, commissioners were appointed,
who made their report on the following day, and an order
was then entered organizing the district.    On the hearing
in the county court of Champaign county the record of the
proceedings in the county court of Ford county for the
organization of the new district was offered in evidence,
an order was entered annexing the lands of the appellants
to the appellee district, and the land owners have appealed.

The appellants say that there are but two issues in the
case:    First, was the South Drummer Drainage District
organized before the territory therein was annexed to the
Sangamon and Drummer Drainage District by the alleged
annexation proceedings in this case?    Second, was there
any work done in the Sangamon and Drummer Drainage
District which afforded better drainage to objectors' lands
so as to increase their value upon the market before the
alleged annexation was had?

The order of the county court of Ford county for the
organization of the South Drummer Drainage District was

entered before the order of annexation in the county court of Champaign county, and for the purpose of this case it may be conceded that the proceedings were formal, regular and in good faith. Nevertheless, they did not effect a legal organization of the district. Before any proceedings were had in the Ford county court the Champaign county court had acquired jurisdiction of the subject matter and of the persons of the parties. It had jurisdiction, therefore, to proceed to a final determination, free from the interference of any court of concurrent jurisdiction. "It is familiar that where two or more courts have concurrent jurisdiction of the same subject matter, the court first acquiring it by service of process will retain the same to the exclusion of the other." (*Plume & Atwood Manf. Co.* v. *Caldwell,* 136 Ill. 163; *Mail* v. *Maxwell,* 107 id. 554; *Mason* v. *Piggott,* 11 id. 85.) The subject matter here was the drainage of the appellants' lands. It is conceded that but one drainage district could be organized to include the lands. Whenever any county court acquired jurisdiction to constitute the land a district, or part of a district, which should have control of the drainage of the land, such jurisdiction was exclusive, and no other county court could deprive it of the power to proceed to a final determination of the matter before it. The question is not, therefore, which order was first entered, but which court first acquired jurisdiction, and of this there is no question. The Champaign county court having first acquired jurisdiction had the right to exercise it to the end.

In the case of *People* v. *Morrow,* 181 Ill. 315, was decided a question similar in principle to that involved here. A petition for an election upon the question of the organization as a village of certain territory adjacent to the city of Waukegan was presented to the county judge on April 18, 1895. An election was held on June 11, resulting in favor of such organization, and later village officers were elected. In the meantime, on May 6 a petition was pre-

sented to the city council of the city of Waukegan for the annexation of the same territory to the city, and on the same day an annexation ordinance was passed. Subsequently *quo warranto* proceedings were instituted to oust the village officers from their offices, and it was conceded that all the proceedings, both for the organization of the village and the annexation of the territory to the city of Waukegan, were regular on their face. It was held that the village organization proceeding having been first instituted by filing the petition with the county judge, until the questions thus raised were determined the city council was without authority to annex the territory to the city. In the opinion the court quotes and approves the following language from *Taylor* v. *City of Fort Wayne,* 47 Ind. 274: "It is a clear principle of jurisprudence that when there exist two tribunals possessing concurrent and complete jurisdiction of a subject matter, the jurisdiction becomes exclusive in the one before which proceedings are first instituted and which thus acquires jurisdiction of the subject."

The action of the Champaign county court was based upon section 58 of the Levee act, which provides that "any land lying outside of the drainage district as organized, the owner or owners of which shall thereafter make connection with the main ditch or drain or with any ditch or drain within the district as organized or whose lands are or will be benefited by the work of such district, shall be deemed to have made voluntary application to be included in such drainage district." In *Gar Creek Drainage District* v. *Wagner,* 256 Ill. 338, we held to the contrary of appellants' contention that section 58 was not intended to authorize the annexation of lands benefited by the work of the district but which had not been connected by ditches with the ditches of the district.

The order of the county court will be affirmed.

*Order affirmed.*

COOKE and CARTWRIGHT, JJ., dissenting:

We do not agree with the construction placed upon that portion of section 58 of the Levee act quoted in the majority opinion and which is based upon the holding in *Gar Creek Drainage District* v. *Wagner,* 256 Ill. 338. We dissented from that holding in the *Wagner case,* and as we did not there point out the basis of our dissent, what we here say may be taken to apply to that case as well as to the one under consideration.

In *People* v. *Karr,* 244 Ill. 374, it is said: "The main purpose of the Farm Drainage act is to permit the organization of drainage districts on a petition of a majority of the property owners owning one-third of the lands or of one-third of the property owners owning a majority of the lands." So, it may also be said that the main purpose of the Levee act is to permit the organization of drainage districts on the petition of such proportion of the owners of the lands to be affected as is specified by that act. Section 2 of the Levee act provides that a majority of the owners of lands who represent one-third of the area, or one-third of the owners who represent a major portion, in area, of the lands to be reclaimed or benefited, may petition for the organization of a drainage district, and that the petition must set out, among other things, a general description of the lands proposed to be affected, with the names of the owners. Section 3 provides for the giving of notice of the hearing on such petition to "all persons interested." Section 5 requires the court to hear and determine whether or not the petition contains the signatures of a majority of the owners of lands who represent one-third of the area, or the signatures of one-third of the owners of lands who represent a major portion, in area, of the lands proposed to be benefited, and provides for the appointment of commissioners. Section 9 defines the duties of the commissioners, among which are, to determine what lands will be benefited by the construction of the proposed work and

whether the proposed district as set out in the petition will embrace all the lands that may be damaged or benefited, and if not, to report what additional lands will be so affected. Section 12 provides that the boundaries of the district may be changed from that described in the petition by including lands benefited which are not therein mentioned or excluding lands therein mentioned which will not be benefited, provided such alteration of boundaries shall not have the effect of so far enlarging or contracting the proposed district that the petitioners will no longer constitute the majority of the adult land owners of the lands therein situated nor represent less than one-third of its area. This section also provides that any person owning lands adjoining or contiguous to said proposed district may at any time, by application in writing, have his lands annexed to said district. Section 16 provides for the final organization of the district.

It will thus be seen that under the Levee act it is not possible to form a drainage district unless the specified proportion of land owners petition for the same, and after the petition has been filed the boundaries of the district cannot be so altered as to disturb this proportion. Whether lands which are deemed to be in need of reclamation by drainage can be organized into a drainage district is thus made to depend upon the wish of a majority of the owners who own one-third of the area or one-third of the owners who own a major portion of the area. Without the signatures of the requisite number of land owners to the petition a drainage district cannot be organized under the Levee act, and if, upon investigation, the court determines that the boundaries of the district should be changed from those specified in the petition, it cannot be organized unless it leaves within the district this proportion of those favoring its organization.

To place the construction that has been given it upon that part of section 58 quoted in the majority opinion defeats the main purpose of the Levee act, and makes it possible for a smaller proportion of the land owners than that

designated by the other sections of the act to finally bring within a drainage district a territory in which a majority of the land owners who own a major portion of the lands are opposed to the organization of a drainage district and have never consented to its organization. Thus, a comparatively few of the land owners within a territory which is deemed to be in need of drainage may finally organize it into a drainage district, regardless of the rights of the majority; and although the owners of lands adjoining a district as established may be opposed to the organization of a district which will include their lands and have refused to take advantage of the improvement by connecting ditches on their own lands with the ditches constructed in the district, and although they may have no desire whatever to have their lands thus reclaimed, still, under this construction, they are deemed to have made a voluntary application for annexation to the district upon the sole ground that their lands may be benefited thereby.

The word "or," in the clause which reads, *"or* whose lands are or will be benefited by the work of such district," when given its literal meaning, serves to defeat the main purpose and intent of the act. This statute should not be so construed. When there is an apparent repugnance or inconsistency in a statute, as in this case, the courts will so construe it, if possible, as not to defeat its main intent and purpose. It seems to us plain that the use of the word "or" in this connection is an inadvertence or mistake, and that the word "and" was intended to be used. By giving this section that construction it is then in entire harmony with the other provisions of the act and does not serve to defeat its purpose. The word "or" is frequently held to mean "and," and *vice versa,* in the construction of statutes in order to effectuate the plain intent of the legislature. "It is well settled that the words 'or' and 'and' will not have their literal meaning when to give them their literal meaning renders the sense of a statutory enactment dubi-

ous. Their strict meaning is more readily departed from than that of other words, and one will be read in the place of the other where the meaning of the context requires it. (Sutherland on Stat. Const. sec. 252.) Where it is necessary to effectuate the intention of the legislature, the word 'and' is sometimes considered to mean 'or' and the word 'or' to mean 'and.'—2 Am. & Eng. Ency. of Law, (2d ed.) p. 333; *Boyles* v. *McMurphy,* 55 Ill. 236." (*Ayers* v. *Chicago Title and Trust Co.* 187 Ill. 42.) To the same effect is *People* v. *VanCleave,* 187 Ill. 125.

It would seem to be an absurdity to hold that one shall be deemed to be making a *voluntary* application to be included in a drainage district when his every act may denote the opposite intention. The word "voluntary" has a well known meaning, and it must be assumed that the legislature used it advisedly. That the use of the word "or" was an inadvertence or a mistake is further borne out by section 58 itself. That part of section 58 quoted in the majority opinion, while appearing to be a complete sentence, is not such in fact. It is a portion of the first sentence of that section, the remainder of the sentence being as follows: "And thereupon the commissioners shall make complaint in writing, setting forth a description of such land or lands, benefited, and amount of benefits; the name of the owner or owners thereof, also, *a description of the drain or ditch making connection with the ditches of such district,* as near as may be; and file said complaint in the county court or before a justice of the peace." As we interpret this language, the commissioners are required, in every case, to set forth in their written complaint the description of the drain or ditch of the owner whose land is thus sought to be annexed which makes connection with the ditches of the district. That could only be done in case a connection had actually been made, and seems to be proof positive that the legislature intended that an owner of land lying outside a drainage district shall be deemed to have

made voluntary application to be included only in the event that he has made connection with the ditches of the district *and* his lands are or will be benefited by the work of the district.