THE PEOPLE *ex rel.* Charles E. Clifton *et al.* Appellees,
*vs.* U. G. SWEARINGEN *et al.* Appellants.

*Opinion filed June 22, 1916.*

1. DRAINAGE—*section 58 of the Levee act, as to annexing lands,
construed.* Section 58 of the Levee act only permits the annexation to an organized district of lands actually connected by artificial drains to such district or of such lands as are actually benefited by the necessary ditches and drains of the district.

2. SAME—*what annexation is not authorized by section 58.* It is not within the contemplation of section 58 of the Levee act that a larger main ditch or a larger or more extensive system of drains than is necessary for the complete drainage of the original district shall be constructed with a view to annexing large bodies of land to the original district on the theory that they will be benefited by the extensive system of drainage.

3. SAME—*when proceedings subsequent to the organization are void.* Where a drainage district containing 3020 acres of land is organized, but before any work is done the commissioners, by annexation proceedings, add more than 25,000 acres of land against the protest of the owners and change the original plans for drainage so as to provide sufficient drainage for the enlarged district, all proceedings subsequent to the organization of the original district are void.

4. SAME—*when a petition to organize a district is insufficient to confer jurisdiction.* A petition to organize a levee drainage district is insufficient to confer jurisdiction upon the court where it utterly fails to describe the character of any of the proposed ditches, gives no information as to whether they shall be open ditches or tile drains, and fails even to state the number or approximate size of the ditches or their location or direction, except as to the part of the main ditch which is to follow a certain creek, and even as to that the dimensions or character of the work to be done is not indicated.

5. SAME—*appearance of land owners does not confer jurisdiction of subject matter.* In a proceeding to organize a levee drainage district the petition is jurisdictional and must state every fact required by the statute to be stated, and if the petition is not sufficient to confer jurisdiction the appearance of the land owners does not have that effect.

6. SAME—*when order of organization may be attacked though it makes a finding of jurisdiction.* Where the record shows that the county court did not have jurisdiction of the subject matter in a drainage proceeding its attempted order organizing the dis-

trict is a nullity and may be questioned by an information in the nature of *quo warranto,* notwithstanding the fact it contains a finding that the court had jurisdiction.

7. SAME—*drainage district should not be a party to information in nature of quo warranto.* An information in the nature of *quo warranto* to attack the legality of the organization of a drainage district should be brought against the persons, as individuals, who are claimed to be unlawfully assuming to be a corporation and not against them by their assumed corporate name.

8. SAME—*when defense of estoppel to information in nature of quo warranto cannot prevail.* Where the defendants to an information in the nature of *quo warranto* do not, by their pleas, attempt to disclaim or justify but set up matters of estoppel and acquiescence on the part of certain of the relators, which, however, do not apply to other relators who are not shown to be in any way barred from asserting their rights, a demurrer to such pleas should be sustained.

APPEAL from the Circuit Court of Champaign county; the Hon. W. K. WHITFIELD, Judge, presiding.

GREEN & PALMER, HERRICK & HERRICK, and H. B. BOYER, for appellants.

LOUIS A. BUSCH, State's Attorney, (OLIVER B. DOBBINS, DONALD C. DOBBINS, ROGER F. LITTLE, and HARRY M. McCASKRIN, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On June 25, 1914, the circuit court of Champaign county granted leave to file an information in the nature of *quo warranto* to determine the legality of the organization of Lower Salt Fork Drainage District of said county. The information was filed June 26, 1914, in the name of the People, upon the relation of about one hundred land owners in the district, the commissioners of highways of the towns of Compromise and Harwood, the Spoon River Drainage District and the trustees of schools of township 21, north, range 10, east, all in said county, and against U. G. Swearingen, George Douglas and Amos Elliott, appellants, the

persons assuming to be drainage commissioners of said district and to exercise the franchises of a drainage district. Appellants filed two pleas, in the first of which they set out the history of the various proceedings in the organization of the district, and in the second alleged facts designed to show that no public interests were involved and that the relators were barred by *laches* and by various acts which appellants claim estopped appellees from contesting the legality of the organization of the district. Appellees replied to the pleas by filing twenty-two replications, to which appellants demurred. The demurrer was carried back to the pleas and sustained by the court, on motion of appellees. The pleas were then amended by appellants by leave of court and the court sustained a demurrer to the amended pleas. Appellants elected to stand by their pleas, and the court entered judgment ousting appellants from the exercise of the franchises of the alleged drainage district and assessed a nominal penalty. This appeal followed.

The first plea set out fully and completely the proceedings for the organization of the Lower Salt Fork Drainage District, which, so far as material here, are as follows: Twenty-two land owners filed in the county court of Champaign county on October 29, 1909, their petition for the organization of a drainage district under the Levee act. The lands described in the petition included 3020 acres, extending about eight miles along Salt Fork creek and varying in width from a half mile to a mile. On December 11, 1909, commissioners were appointed, who filed their report on April 29, 1910. The report stated that they had located the starting point of said work or ditch east of the starting point named in the petition,—*i. e.,* on the north line of the district east of Salt Fork creek,—and that said ditch should be extended a short distance north of that point to intersect with said stream and then extend southerly along the general course of said stream to the southern limits of the district; that by their plan of work they had straightened

certain parts of said stream and had reduced its length from
13.36 miles to 9.60 miles; that such construction was proper
and feasible and beneficial, etc., and that the probable cost
thereof, including incidentals and court costs, will be $120,-
000 and the annual cost of repair $500. On May 10, 1910,
the commissioners amended their report by cutting down
the size of the ditches at certain points and reducing the
cost of the work to $100,000, which amended report was
by the court approved and the final order of court was en-
tered organizing the district. The report also stated that
the district would not embrace all the lands which would
be benefited by the work; that other lands adjoining and
immediately east and west and north of the proposed dis-
trict, and other drainage districts north thereof, would be
greatly benefited by said construction, and that a large por-
tion of the cost of said work should be assessed upon said
drainage districts; that said lands so benefited could not be
attached to the district in that report; that the commission-
ers have laid out and caused to be surveyed by the engi-
neer, and have estimated the cost of, a ditch for the drain-
age of said lands in the proposed district and those which
may hereafter be annexed to this district, with capacity for
furnishing outlet to the ditches of said other drainage dis-
tricts having for their outlet the main ditch of the proposed
district. After the order organizing the district was en-
tered, the commissioners, on September 20, 1910, filed two
petitions with a justice of the peace for the annexation of
large bodies of land to the district. On October 18, 1910,
the justice entered an order annexing the lands described in
one petition, and on July 1, 1911, entered an order annex-
ing the lands described in the other petition. On November
11, 1910, two other petitions were filed for the annexa-
tion of other large bodies of lands to said district, and on
June 6, June 26, June 28 and July 1, 1911, similar petitions
to annex lands to the district were filed and like orders were
entered annexing to the district the lands in said petitions

described.  As each order was entered, transcripts certified
by the justice of the peace were filed in the county court.
In each petition it was alleged that the lands therein de-
scribed would be benefited by the work to be done.  El-
bert E. Smith, one of the land owners named in the peti-
tion filed June 26, 1911, appealed to the circuit court from
the order of annexation and the drainage district moved to
dismiss the appeal for want of jurisdiction.  The order of
the circuit court overruling said motion and dismissing the
petition of the district as to the lands of Smith was affirmed
by this court on December 7, 1912.  (*Lower Salt Fork
Drainage District* v. *Smith,* 257 Ill. 52.)  No assessment
was levied and no work appears to have been done on the
drainage ditches before the various annexation proceedings
were had, which increased the area of the district to more
than 30,000 acres.  On March 23, 1912, the commissioners
presented to the county court their report that the work
proposed had not been constructed, and petitioned for a
modification of the plans and the laying out of additional
work through said lands annexed to the district.  They
stated in the petition that in order to make the changes
requested it was necessary to change the main open ditch
heretofore ordered in certain places so as to cause less dam-
age to the lands through which the same is constructed and
to confer larger benefits than as originally laid out; that
by reason of said additional lands having been attached to
said drainage district it will be necessary to extend the work
originally laid out to the north and to extend the main ditch
originally ordered north through said lands attached to said
district, as shown by their maps, plans, profiles and specifi-
cations attached to the report; that they did not desire to
make an assessment upon the lands in said district until all
the lands properly belonging to said district and now at-
tached thereto were attached and annexed, so that an assess-
ment might be levied upon all the lands at one time; that
said district has neither received nor expended any money,

no assessments having been levied or collected, and that the
probable cost of the entire work as extended, including all
incidental expenses and costs and damages, will be about
$190,000, and that the probable cost to keep the same in
repair will be about $700 per year, the main ditch as pro-
posed being about 23.25 miles in length, while the length of
the present ditch (or Salt Fork river) is about 28 miles
in length through the entire district. The county court, on
June 10, 1912, approved said report and ordered that the
original plans be altered and modified accordingly, and that
the commissioners proceed to secure the right of way for
said newly proposed work, and that they shall proceed to
assess said lands for the sum of $190,000. On August 20,
1912, appellants filed a further petition in the county court,
stating that not to exceed $110,000 should be levied upon
the lands included within the boundaries of said drainage
district as enlarged; that the remaining cost of said drain-
age ditch through said district should be collected from the
upper drainage districts (about ten in all) emptying into
said main ditch and from lands still lying outside of the
district which will be benefited by said proposed work; that
in their judgment said sum of $110,000, together with the
moneys which they should and will be able to collect from
said upper drainage districts and from said other lands so
benefited but not in the district, will be sufficient to meet
the entire cost of the work as now laid out and adopted,
together with all damages necessary to be paid and all ex-
penses; and they further state that said lands outside of
the district and so benefited will ultimately be attached to
this drainage district, and they pray that said order be modi-
fied, directing that only $110,000 be at this time assessed
against the lands in the district, public roads, railroads and
property benefited by the work and in the district as now
organized. The court found said allegations true and ap-
proved that report, and ordered that said commissioners
make out an assessment roll and assess against the lands,

public roads and railroads within the boundaries of the district said sum of $110,000, etc. It is further averred in the plea that appellants filed said assessment roll in December, 1913, and that the same was pending for a hearing at the time leave to file the information in this case was granted in the circuit court.

By the proceedings in the county court and before the justice of the peace, as disclosed by said first plea, a drainage district with an area of more than 30,000 acres, owned by three hundred or more land owners, with a supposed complete system of drainage, was organized upon an original petition of only twenty-two of such land owners, constituting about seven per cent of the whole and owning about one-thirtieth of all the lands. The plea also discloses that the district is to be further enlarged by the annexation of all the lands adjoining the district that will be benefited by the drainage system that the drainage commissioners have recommended to the county court and which was approved by that court and which extends throughout the length of the district, and which district is now about twenty-one miles long, or almost three times as long as the original district of 3020 acres. More than 24,000 acres of the district as now organized lie north of the north line of said original district. Appellants sought by their said plea to justify their exercise of the franchises of the whole district as enlarged. The law did not authorize the organization of the district by the method employed by appellants, and the court therefore properly sustained the demurrer to that plea. 1 Chitty's Pl. (1st ed.) 579; *People* v. *Darst,* 265 Ill. 354.

Sections 2 and 12 of the Levee act provide that a drainage district can only be organized when a majority of the adult owners of land within the proposed district representing one-third in acres of the lands, or one-third of the adult land owners representing a major portion, in area, of the land, shall file in the county court their petition setting

forth the matters required by the statute and asking for the organization of the district, and further provide that the boundaries thereof cannot be changed before such organization, upon application of the commissioners, so that the petitioners will no longer constitute a majority of the adult land owners of the lands therein situated nor represent less than one-third of its area. Any person or persons may, on proper petition signed by them, have their lands annexed to the district after it is organized. By section 58 of the Levee act, after a drainage district is organized, "any land lying outside of the drainage district as organized, the owner or owners of which shall thereafter make connection with the main ditch or drain or with any ditch or drain within the district as organized or whose lands are or will be benefited by the work of such district, shall be deemed to have made voluntary application to be included in such drainage district." Said section further provides that upon complaint in writing being filed by the commissioners of the drainage district before the county court or a justice of the peace, and upon proper notices, etc., being served upon the land owners, and upon proper proofs, such lands so connected with the main or other ditch or drain of such district or benefited by the work of such district may be annexed to such district and assessed as other lands therein situated. The provisions of said section 58 were construed and upheld by this court in the cases of *Gar Creek Drainage District* v. *Wagner*, 256 Ill. 338, and *Sangamon Drainage District* v. *Eminger*, 257 id. 281.

The legislature had the power, under the provisions of the constitution authorizing it to pass laws for the organization of drainage districts and for the special assessment of property benefited thereby, to authorize the annexation of all such lands as were benefited and all such lands as had been connected by their owners to the drains of such organized district. Such a law is just and equitable. No one should be permitted to interfere with the organization

of a district, in the first instance, when the requisite majority of the land owners petition for such district, and after it is organized no one should be permitted to receive actual benefits from such drainage system and not bear his just proportion of the necessary costs thereof. Section 58, however, only permits the annexation to an organized district of lands actually connected by artificial drains to such district or of such lands as are actually benefited by the necessary ditches and drains of such district. In other words, the organized district may construct its main and lateral ditches with only sufficient capacity to properly care for all the waters that may come into such main ditch and lateral drains and to give complete drainage to the lands of the district if the cost of such construction will not exceed the benefits to all the lands in the district, and such a district, with such construction, may annex all lands actually benefited by such a drainage system. In the construction of the drains of such organized district it is not permissible, under said section 58, to construct a larger main ditch or a larger or more extended system of drains than is necessary to properly drain the lands of the original district petitioned for, with a view to organize a much larger district and to extend the work or drains into the added territory, as was undertaken by appellants in this case. Sections 2, 12, 58 and 59 of the Levee act must be construed together, and be so construed as to give each section its proper meaning and effect as intended by the legislature. After a drainage district is organized, with necessary drains and ditches to drain that district, or after such a district has been organized and all lands have been added to it that are benefited by such drainage system, and after an assessment of lands throughout the district has been made for the purpose of constructing drains or ditches or enlarging or repairing the main drains or ditches of said district according to the profiles, plans and specifications of the commissioners or reported and confirmed, by the provisions of section 59 ad-

ditional ditches, drains, outlets or other work may be constructed in the district as organized and so extended if there remain lands in the district which in the judgment of the commissioners need more minute and complete drainage. Such new or additional systems of drainage are known as sub-districts when confirmed by the county court, and the commissioners of the principal district are commissioners of the sub-district, and all the lands benefited in the sub-district are assessed for the additional work, and the funds so collected are to be kept as a separate fund for the use of such sub-district. Any lands lying outside of any sub-district so organized, the owners of which shall thereafter make connection with any ditch or drain within such sub-district, or whose lands are or will be benefited by the work of such sub-district, may be attached to the sub-district, under section 58, in the same manner as such attachments are made to original districts and assessed to pay the costs of the drainage of the sub-district.

It requires no further argument or comment to make it apparent that all proceedings of appellants subsequent to the organization of the original district of 3020 acres are in violation of the Drainage act and therefore void. The entire proceedings by which the enlarged district was organized, beginning with the filing of the original petition of the twenty-two land owners, show an attempt to organize the district by first organizing a small body of land as a nucleus, in the form of a district, and then, by adding other lands on complaint of the commissioners and against the will and protest of the added land owners, and after abandoning the first system of drainage, to expand the district to its intended dimensions, with suitable and sufficient drainage for the entire district.

It is insisted by appellants that the original district of 3020 acres as organized is a valid district, as shown by the averments of the first plea, and that it must be held to be a complete answer to the charges in the information

that no valid district exists, and to the further charge that appellants are not commissioners of any valid district. If we treat the plea simply as a plea of justification as to the original district and the allegations as to the subsequent irregular proceedings as mere surplusage, as suggested by appellants, we must still hold that the whole proceedings to organize the district were void because the original petition signed by the twenty-two land owners conferred no jurisdiction upon the county court. The petition utterly failed to describe the character of any of the proposed ditches to be constructed to drain said lands and gave no information as to whether it was proposed to construct open ditches or tile drains, and failed even to state the number or the approximate sizes of the ditches or their location and direction, except as to the part of the main ditch that was to follow Salt Fork creek, and the dimensions or character of the work to be done in that channel was not indicated. The only part of the petition that is descriptive of the ditches or that gives information of their character or location is the following: "Said lands require a combined system of drainage and protection from wash and overflow, independent of levees for agricultural and sanitary purposes, by the work proposed to be done and by the improvement of the ditches therein and the construction of additional ditches through said lands; that through said lands flows a natural water-course, known as Salt Fork creek, with numerous branches, both open and tile, draining into the said water-course, and that a large portion of said lands herein described are wet and in need of drainage, and are subject, at times of high water, to wash and overflow; that by the improvement of said natural water-course and the construction and improvement of ditches through said lands a portion of said lands will be almost wholly redeemed by said system of drainage and the remainder will be greatly benefited thereby; * * * and that said system of ditches is to be constructed in said district for the most part in the

present channel of said water-course, but that said channel needs cleaning out, repairing, straightening, deepening, widening and improving in order to afford proper and sufficient drainage for said lands,  *  *  *  and the work herein petitioned for is the construction of an improved channel and water-course through said lands, which water-course is very crooked and obstructed by fallen trees, silt, willows and other obstructions; that the starting point of the work to be done in said district is located at the intersection of the north line of the southwest quarter of section 26, in township 20, north, range 10, east of the third principal meridian, with the center of Salt Fork creek, and that said water-course and channel now located and extending through the territory included in said drainage district extends in a general southerly direction through said territory, with many curves and variations in its route, and emptying where said water-course crosses the south line of said section 33, township 19, north, range 10, east."

From these allegations it appears that there are to be constructed a number of ditches to straighten and shorten the channel of said creek, but the number or location or character of construction thereof is not given in the petition. The ditches are to be "for the most part constructed" in the creek. Where the others are to begin and end in no way appears, and no description of the character of the work to be done anywhere is even attempted. The petition in this class of cases is jurisdictional and must state every fact required to be stated by the statute. The petition in this case was insufficient to confer jurisdiction upon the county court because of its failure to locate or to describe in any manner the character of the proposed ditches. (*Aldridge* v. *Clear Creek Drainage District,* 253 Ill. 251; *Tennessee Drainage District* v. *Moye,* 258 id. 296; *Wayne City Drainage District* v. *Boggs,* 262 id. 338.) The said plea set out the petition in full, and therefore the recital of the county court that it had jurisdiction of the subject matter,

273 — 41

or any other recital concerning the contents of the petition, being contradicted by the petition itself as pleaded, is not decisive of the question of jurisdiction. The appearance of the land owners in that court could not authorize it to proceed, for jurisdiction of the subject matter cannot be given by consent. *Senichka* v. *Lowe*, 74 Ill. 274; *People* v. *Sangamon and Drummer Drainage District*, 253 id. 332.

As to the second plea, it is sufficient to say that the supposed acts of estoppel relied on by appellants related only to a portion of the appellees. The doctrine of estoppel does not apply in this case to the highway commissioners, the trustees of schools or to the Spoon River Drainage District. The first thing done directly affecting those relators was the levy of a special assessment. Very shortly after the commissioners attempted to exercise that power, which belonged to a legally organized district, the petition to file the information in this case was presented to the circuit court. No work had been done in the district before this proceeding was begun. The only change which had taken place after the organization of the original district was the accumulation of costs in carrying out the illegal proceedings related in said first plea, and the accumulation of such costs is no ground for denying the relief prayed for by relators. Where the defendants do not by their pleas attempt to disclaim or justify but set up matters of estoppel and acquiescence on the part of certain of the relators, which, however, do not apply as to other relators who are not shown to be in any way barred from asserting their rights, a demurrer to the pleas to an information in the nature of *quo warranto* is properly sustained. *People* v. *Anderson*, 269 Ill. 334.

Where the record shows that the county court did not have jurisdiction of the subject matter in a drainage case, its attempted judgment or order is a nullity and can be questioned in a proceeding in the nature of *quo warranto*, notwithstanding the fact it may have found that it did have

jurisdiction. *People* v. *Karr,* 244 Ill. 374; *People* v. *Darst, supra; People* v. *Sangamon and Drummer Drainage District, supra.*

It was not necessary in this case to make the drainage district a party. Where a number of individuals unlawfully assume to be a corporation, the information should be against them as individuals and not by their assumed corporate name. This rule applies to municipal as well as private corporations. If the information calls in question the corporate existence of a municipality or the legality of its organization, the information must be brought against the officials or individuals assuming to exercise the corporate powers. *People* v. *City of Spring Valley,* 129 Ill. 169.

Many other questions arising on this record have been ably presented by learned counsel for both of the parties to this suit, but it is not deemed advisable to extend this opinion further, as our rulings on the points above set forth are decisive of the issues in this case.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*