(No. 18521.—

THE PEOPLE *ex rel.* John L. King *et al.* Appellees, *vs.* THE
NORTH FORK OUTLET DRAINAGE DISTRICT, Appellant.

*Opinion filed June 23, 1928.*

DOBBINS & DOBBINS, and LESLIE J. TAYLOR, for appellant.

H. E. FULLENWIDER, State's Attorney, (B. L. CATRON, and STEVENS & HERNDON, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Upon leave granted, the State's attorney of Sangamon county, on the relation of a large number of owners of land in that county, filed in the circuit court an information in the nature of *quo warranto* against the North Fork Outlet Drainage District in the counties of Macon, Christian and Sangamon, charging it with unlawfully holding and executing over and upon the land of the relators, without warrant, right or lawful authority, the privileges, powers and franchises of a levee and drainage district under the act of 1879 providing for the organization of such districts. The respondent filed two pleas of justification, to which demurrers were sustained, and the respondent electing to stand by its pleas, a judgment of ouster was entered against it, from which it has appealed.

The information was directed against the drainage district in its corporate name for the purpose of requiring it to show by what authority it exercised its franchises over the relators' land, and the legality of its organization was therefore admitted. (*People* v. *Central Union Telephone Co.* 192 Ill. 307; *Distilling and Cattle Feeding Co.* v. *People*, 156 id. 448; *North and South Rolling Stock Co.* v. *People*, 147 id. 234; *People* v. *City of Spring Valley*, 129 id. 169.) The pleas allege the organization of the district on November 26, 1921, by an order of the county court of Christian county, in which lay the greater part of the lands then proposed to be organized into a drainage district. Under section 4 of the Levee act the county court of Christian county had, therefore, jurisdiction not only of the proceeding for the organization of the district but of any subse-

quent proceedings of the district. (*People* v. *Sangamon and Drummer Drainage District,* 253 Ill. 332.) Therefore no question arises in this case affecting the legality of the organization of the appellant or the jurisdiction of the county court of Christian county of any proceeding in which its jurisdiction may have been properly invoked.

The first plea showed that after the organization of the district, in 1921, the commissioners on July 6, 1926, filed a complaint in the county court of Christian county stating that they had constructed a main drain in the district, consisting of a channel with a bottom width of fifty feet and a total length of fourteen miles, along the Sangamon river from the Niantic bridge down to a point approximately one mile west of the Roby bridge, and were then constructing additional work theretofore ordered by the court to be done, reaching from the Niantic bridge up the river to a point within approximately two miles of the city of Decatur; that the work constructed and then under construction constituted a total of twenty-two miles of work along the river in straightening and deepening its channel; that an order had been recently entered directing the commissioners to extend the work of the district from the lower end thereof, approximately one mile west of the Roby bridge, to a point near the village of Riverton, near the State highway bridge, by straightening and dredging the channel of the Sangamon river down to that point. The complaint further showed that the work of the district would decrease the overflow on the lands therein described, render them more tillable and of more value for agricultural purposes, and relieve them to a large exent of noisome odors from which they suffered by reason of the stagnant water which theretofore existed in the stream; that all of the lands would be benefited both for agricultural purposes and in a sanitary way by the work to be done in the district, and that a number of land owners along the course of the river below the Roby bridge had petitioned that their lands be annexed and

made a part of the district, and their lands had been annexed to the district by an order of the county court. The complaint stated that a map was attached to it showing the lower end of the drainage district and the proposed extension of its boundaries and work, but the plea did not show the map. The names and residences of the owners of land in the proposed addition to the district, with a description of each tract, were a part of the complaint, which concluded with a prayer that it be set for hearing and that an order be entered annexing the lands to the district. The plea then averred that the complaint was set for hearing on July 26, 1926, the notice required by the statute was given, the land owners appeared and on their motion the cause was continued until August 2, when they filed objections, the cause was heard and an order was entered, in which the court found that due notice had been given in the manner required by law, and that all the lands described in the complaint, except certain specified tracts, would be benefited by the work of the drainage district as theretofore ordered by the court, and ordered that the lands so described, aside from those specifically excepted, be annexed to and made a part of the drainage district. No appeal was taken from this order. The second plea set up the same proceedings of the county court with less detail. Each plea relied upon the order of the county court of Christian county as the warrant by which appellant held and executed over the lands in question the privileges, powers and franchises of a drainage district. The question for decision is, therefore, whether the record shows that the county court of Christian county had jurisdiction to enter this order.

The question is one of jurisdiction of the subject matter, and it is not claimed by appellees that the notices published and served were not sufficient to give the court jurisdiction of their persons. The basis of jurisdiction of the subject matter must be found, if at all, in section 58 of the Levee act, which provides for the annexation of lands lying

outside the district in the following language: "Any land lying outside of the drainage district as organized, the owner or owners of which shall thereafter make connection with the main ditch or drain or with any ditch or drain within the district as organized or whose lands are or will be benefited by the work of such district, shall be deemed to have made voluntary application to be included in such drainage district; and thereupon the commissioners shall make complaint in writing, setting forth a description of such land or lands benefited, and amount of benefits; the name of the owner or owners thereof, also a description of the drain or ditch making connection with the ditches of such district, as near as may be; and file said complaint in the county court or before a justice of the peace." The remainder of the section provides for the subsequent procedure upon the filing of such complaint.

It has been held that under section 58 lands may be annexed to a district even though they have not been previously connected by ditches with the ditches and drains of the district. (*Sangamon and Drummer Drainage District* v. *Eminger*, 257 Ill. 281.) The main purpose of the Levee act is to permit the organization of drainage districts on the petition of a majority of the owners of land within the district proposed to be organized who represent one-third, in area, of such land, or one-third of such owners representing a major portion, in area, of the lands. The boundaries of the district may be changed, in accordance with the provisions of section 12, by including lands not mentioned in the original petition which will be benefited or excluding lands mentioned which will not be benefited, provided such alteration of boundaries shall not have the effect of so far enlarging or contracting the proposed district that the petitioners will no longer constitute a majority of the adult land owners representing one-third, in area, of the land in the district or do not constitute one-third of the owners of land in the district representing a major portion, in area, of the

lands. The object of the organization of a drainage district is to enable the improvement of the drainage of all the land in the district by special assessment upon all the property of the district benefited by such improvement, and the assessment is limited to the lands within the district so benefited. The commissioners are not confined, in the adoption of plans for the drains or ditches of the district, to those proposed in the petition but are authorized to locate, design, lay out and plan such drains and ditches in such manner as they shall think will drain or protect the lands of the district with the least damage and greatest benefit to all lands to be affected. The verdict of the jury assessing the benefits and damages must produce the total sum of the estimated cost of the proposed work and proceedings incident to the same and the amount of damages allowed, and no more, and the work to be done by the district can include only such drains, ditches and other work as may be necessary to give complete drainage to the lands of the district. In the construction of the drains of a district so organized it is not permissible to construct a larger main ditch or a larger or more extensive system of drains than is necessary to properly drain the lands of the district as organized, with a view later to annex other territory to constitute a much larger district and to extend the work or drains into the added territory. The assessment of benefits and damages must be made only on the basis of a system of drainage designed and necessary to properly drain the lands of the district, and after the district is organized it may construct its main and lateral ditches with only sufficient capacity to properly care for all the waters that may come into such main ditch and lateral drains and to give complete drainage to the lands of the district if the cost of such construction will not exceed the benefits to all the lands in the district, and such a district, with such construction, may annex all lands actually benefited by such a drainage system. (*People* v. *Swearingen,* 273 Ill. 630.) The commissioners are

without authority to construct a more extensive system of drainage than is necessary for the purposes of the district as originally constituted, in anticipation of the annexation of other land to the district.

Section 58 was not intended by the legislature to permit the enlargement of the district and the extension of the work of the district beyond what would be required for the purposes of the district as originally constituted, and it was not within the jurisdiction of the county court to authorize it to do so. It is not possible, under the Levee act, to organize a drainage district unless one-third of the owners of land representing the major part, in area, of the lands included within the district, or a majority of the owners representing one-third, in area, of the lands, have petitioned for such organization. The organization of lands within a defined district into a drainage district therefore depends upon the question whether a majority of the owners who own one-third of the area, or one-third of the owners who own a major portion of the area, have signed and filed a petition for such organization, and a petition signed by the required proportion of land owners is an essential prerequisite to the jurisdiction of the county court to enter an order finding the drainage district established as provided by law. If the court has jurisdiction, upon petition of the commissioners, to authorize the annexation of lands not included within the boundaries of a drainage district without any petition by the owners of the land to be annexed, upon the ground, only, that such lands are or will be benefited by the work of the district, then the owners of a small area of land within a territory of much greater extent, owned by many more persons, may organize their smaller portion of the whole territory into a drainage district and then proceed to annex the larger territory, whose owners have never petitioned and do not desire to have it included in a drainage district. Thus the main purpose of the act, to permit the organization of drainage districts only on the petition of such a pro-

portion of the owners of land within the district as is required by the statute, would be circumvented and a drainage district would be created by indirection which could not be created directly in pursuance of the statute, constituted of the territory in which a majority of the land owners who own a major portion of the lands were opposed to the organization of the drainage district and had never consented to its organization. This was what was attempted in the case of *People* v. *Swearingen, supra,* in which it was held that the proceedings were void.

The jurisdiction of the court can be called into exercise only by a complaint in writing of the commissioners showing that an owner of land lying outside of the drainage district has made connection with a ditch or drain within the district or that his land has been or will be benefited by the work of such district. The complaint which is set forth in the plea does not show that anyone outside the district has made connection with any ditch or drain within the district, and therefore jurisdiction of the county court must rest upon the allegation "that the work of said district will decrease the overflow on the lands hereinafter described, render the said lands more tillable and of more value for agricultural purposes, and relieve them to a large extent of noisome odors from which they suffer by reason of the stagnant water which heretofore existed in said stream, and that all of said lands will be benefited both for agricultural purposes and in a sanitary way by the work to be done in said drainage district," and the finding of the court that the lands in question "will be benefited by the work of said drainage district as heretofore ordered by this court." The benefit "by the work of said district" which will give the county court or justice of the peace jurisdiction to enter an order of annexation of lands benefited refers to the work of the district as originally constituted, for it is only such work which the commissioners are authorized to execute. Section 58 authorizes the annexation of all lands actually

benefited by that drainage system but of no other lands. The first plea shows that the commissioners had constructed the main drain of the district fourteen miles long down the Sangamon river from the Niantic bridge to the Roby bridge, and were constructing additional work ordered by the court reaching from the Niantic bridge up the river to within approximately two miles of the city of Decatur, the whole constituting twenty-two miles of straightening and deepening of the channel of the river, and that an order had been entered requiring the commissioners to extend the work of the district from the lower end, approximately a mile west of the Roby bridge, to the State highway bridge near Riverton. No relation whatever is shown between the work of the original district and the lands sought to be annexed in this proceeding. The Roby bridge is near the lower end of the district, and the work ordered to be done consists of straightening and dredging the channel of the river down the stream from the lower boundary of the district to the bridge near Riverton. The distance between these two points is not stated in the petition but the description of the land sought to be annexed is given by section and government subdivision, from which it appears that the land extends several miles down the river, certainly not less than eight miles and probably more. The complaint stated that the work of the district will decrease the overflow on the lands described, render them more tillable and more valuable for agricultural purposes and relieve them to a large extent of noisome odors caused by stagnant water, and that all the lands will be benefited both for agricultural purposes and in a sanitary way by the work to be done in said district, and the court found that the land would be benefited by the work of the drainage district as theretofore ordered by the court. Neither the allegation of the complaint where it is contrary to a known law of nature, nor the finding of the court where it is contradicted by the record, will be accepted as conclusive of the issue. When the

record shows that the county court did not have jurisdiction of the subject matter in a drainage case its attempted order or judgment is a nullity, and can be questioned in a proceeding in the nature of *quo warranto* notwithstanding the fact that it may have found that it did have jurisdiction. (*People* v. *Swearingen, supra.*) It is manifest that the allegation that the straightening and deepening of the channel of the river will decrease the overflow on the land below can not be accepted as the basis of a finding that the land below will be benefited by such work. If the "work of the district" mentioned in the complaint by which the district will be benefited refers to the work done in the original district, the complaint is contradicted by its own terms, which show that the lands outside the district and lower down on the stream cannot be benefited, and if the expression refers to the work ordered by the court to be done in the future seven or eight miles below the district, the complaint does not comply with the requirement of the statute that the land must be benefited by the work done in the original district.

In an information in the nature of *quo warranto* the people need not allege any facts showing that the exercise of the right by the respondents is without lawful authority. It is enough to allege that they are exercising the right without lawful authority. The respondents must then disclaim or justify, and if they justify they must set out the facts which show their lawful authority to exercise the right claimed, and in doing so must set out their title with particularity and must state the facts showing a *de jure* title. (*People* v. *Central Union Telephone Co.* 232 Ill. 260; *People* v. *Barber,* 265 id. 316; *People* v. *Darst,* id. 354; *People* v. *Hartquist,* 311 id. 127.) In proceedings for the organization and extension of drainage districts the county court derives its jurisdiction from the statute, alone. No presumption arises to support its action in any particular but every fact necessary to such jurisdiction must appear af-

firmatively of record, since nothing is to be presumed to be within the jurisdiction. (*Payson* v. *People,* 175 Ill. 267; *Drummer Creek Drainage District* v. *Roth,* 244 id. 68; *Aldridge* v. *Clear Creek Drainage District,* 253 id. 251; *Maulding* v. *Skillet Fork Drainage District,* 313 id. 216; *Soldier Creek Drainage District* v. *Illinois Central Railroad Co.* 323 id. 350.) In a proceeding in the nature of *quo warranto* to test the validity of the organization of a drainage district, a plea in justification by the respondents must show the proceedings by which the district was organized, and this can be done only by the record. A record is required to be kept of the proceedings and the jurisdiction of the county court can be shown only by its record, and that record is the only lawful evidence of the action taken and cannot be contradicted, added to or supplemented by parol. (*People* v. *Hartquist, supra; People* v. *Carr,* 231 Ill. 502; *O'Connell* v. *Chicago Terminal Railroad Co.* 184 id. 308; *Chaplin* v. *Highway Comrs.* 129 id. 651; *People* v. *Madison County,* 125 id. 334; *Troxell* v. *Dick,* 216 id. 98.) The first plea set out the record of the county court, which included a copy of the complaint of the commissioners and the order of the court, which showed, as we have seen, that the court was without jurisdiction. The second plea did not set out the complaint or the record in words and figures but did set them out according to their legal effect, in the opinion of the pleader. The demurrer to the plea does not admit the construction given by the pleader to the complaint and the order of the court, and since the complaint and order are not set out in this plea in full, the plea does not show any jurisdiction in the county court of Christian county to make the order of annexation.

The demurrer to both pleas was properly sustained, and the judgment of the circuit court of Sangamon county is affirmed.

*Judgment affirmed.*