(No. 20875.—

THE PEOPLE ex rel. James M. Weaver et al. Appellants, vs.
ZEALY M. HOLMES et al. Appellees.

*Opinion filed April 23, 1932.*

ORR, J., dissenting.

J. E. BARNES, State's Attorney, PAUL SAMUELL, and
CRAIG & CRAIG, for appellants.

DOBBINS & DOBBINS, LYMAN LACEY, JR., ALLEN T. LUCAS, and SCOTT W. LUCAS, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On January 3, 1931, the People, on the relation of James M. Weaver and Bert Weaver, filed in the circuit court of Mason county a verified petition asking that leave be granted to the State's attorney of that county to file an information in the nature of *quo warranto* questioning the right and authority of appellees, Zealy M. Holmes, Ora J. Coon and Thomas F. Schaad, to hold and execute the offices of commissioners of the pretended Sangamon Outlet Drainage District of the counties of Mason, Menard and Cass. The prayer of the petition was granted and an information in the name of the People, on the relation of James M. and Bert Weaver, consisting of two counts, was filed. On January 12, 1931, Ralph Bradford, director of conservation of the Department of Conservation of the State of Illinois, and Mary A. Adkins and Maude P. Adkins, filed petitions for leave, and were given leave, to intervene as relators in said information, and their names were inserted as relators in the information by interlineation. On March 14, 1931, three additional counts to the information were filed. Three pleas were filed by appellees, in which, among other things, certain proceedings in the county court of Mason county were set forth in which appellees were appointed commissioners of the district, and which resulted in a final order of said court, dated October 23, 1928, declaring the Sangamon Outlet Drainage District duly organized. Demurrers to these pleas were overruled. The People and the relators electing to stand by their demurrers, judgment was entered for appellees. The People and the relators Mary A. Adkins, Maude P. Adkins and Ralph Bradford, director of conservation, have appealed.

No question is raised as to the sufficiency of any count of the information and the allegations thereof need not be

set out, but it should be noted that it was alleged in the first additional count of the information that the State's attorney of Mason county was appearing in his official capacity in the interests of the people of the State of Illinois; that appellees were requesting that the State of Illinois pay the sum of $50,000 toward the cost of the proposed work of the pretended drainage district; that Ralph Bradford, director of conservation, was appearing in his official capacity because the territory through which the work of the pretended district was proposed to be done was a natural home and habitat of the fish and game life of that part of the State and that the home and habitat of the fish and game life would be damaged if the proposed drainage work were constructed; that Bradford received no notice of the proceedings to organize the drainage district until November 1, 1930; that the contract for the proposed work of the pretended drainage district was let on August 9, 1930, but that no work had been done under the contract; that appellees had made contracts to purchase right of way for the work of the pretended district but had paid nothing for the right of way; that bonds of the pretended district had been contracted to be sold but had not been delivered to the purchasers or paid for by them, and that the purchasers of the bonds had refused to accept them because of certain defects in the proceedings for the organization of the district.

Three pleas were filed to the information by appellees. In the first plea it is alleged that certain proceedings in the county court of Mason county were had in which appellees were appointed commissioners of the district, and which resulted in a final order, dated October 23, 1928, declaring the Sangamon Outlet Drainage District duly established. In the second plea it is alleged that certain proceedings were had in the county court which resulted in the organization of the district, without setting out any part of the records of the county court in those proceedings. It is also alleged in that plea that since the final order of the county court

of October 23, 1928, declaring the district duly established, appellees had incurred, as commissioners of the district, a liability of $14,750 for the services of engineers, of $6500 for attorneys' fees and of $1500 for court costs and expenses; that they had prepared an assessment roll of benefits and damages on which hearings had been had which resulted in an assessment of $123,960.52 against the lands of the district; that they had collected $5000 of the assessment from seventeen land owners of the district; that they prepared for and had a hearing on a petition for a change of the plans of the proposed work of the district which resulted in an order granting the prayer of the petition; that they had procured permits from the War Department of the United States and from the Department of Purchases and Construction of the State of Illinois for the doing of the proposed work of the district; that Bradford, director of conservation, owned no land in the district and no other land which would be benefited by the work of the district; that the relators James M. Weaver, Bert Weaver, Mary A. Adkins and Maude P. Adkins had notice of the proceedings in the county court for the organization of the district and of all the proceedings taken by appellees after the district was declared established, and that James M. Weaver appeared at the hearing on the assessment roll and contested the amount assessed against his land. It was also averred in the plea that the relators had been guilty of *laches* and were estopped to question the validity of the organization of the district. In the third plea it was also alleged that proceedings in the county court in which appellees were appointed commissioners of the district were had, and that the district was by the final order of the court entered October 23, 1928, declared to be established. It was further alleged in that plea that after the order of October 23, 1928, had been entered appellees employed engineers, who advised and consulted with the Department of Purchases and Construction of this State concerning a permit for the doing of

the proposed work of the district, and as a result of the consultation the engineers prepared plans and specifications for the proposed work differing from the plans and specifications approved by the court; that a permit for the doing of the work according to the changed plans and specifications was obtained from the Department of Purchases and Construction; that a petition was filed in the county court on December 14, 1929, to change the plans of the work, the petition being set out; that notice of hearing on the petition was given, a hearing was had, and an order was entered by the county court on January 3, 1930, approving the change of plans, the order of the court being set out in full; that prior to the entry of the order of the court appellees presented to the War Department of the United States plans for the work of the district as changed, and the same were approved by the War Department and its consent given to do the work in the manner proposed by the change; that the work of the district that is proposed to be done is outside the boundaries of the outlet district and a portion thereof is along the right of way of the Mason and Cass River Drainage District as set forth in the information of appellants, but that such work is being done with the consent and approval of the commissioners of said drainage district and is an improvement of the outlet of all of the drainage district located within the boundaries of the outlet district and for the lands within said district which are not a part of any drainage district organized under the laws of this State; that the information was filed on behalf and at the instance of James M. Weaver, Bert Weaver, Mary A. Adkins and Maude P. Adkins, who are land owners in the district, and was filed for their private benefit; that each of them was notified, as provided by law, of the filing of the petition for the organization of the district; that Bradford, director of conservation, was not an owner of land in the district or of land that would be benefited or damaged by the work of the district, and that appellees were asking

the State of Illinois to contribute the sum of $50,000 toward the cost of the proposed work, but that the State could not be compelled to contribute any sum for such purpose. All the pleas conclude with denials of usurpation and with a verification.

The Sangamon Outlet Drainage District, as declared to be established by the order of the county court of Mason county, includes land on both sides of the Sangamon river in the counties of Cass, Mason and Menard and extends up the river for a distance of approximately twenty-five miles from a point approximately five miles south and east of the place where the river empties into the Illinois river. The work proposed to be done by the district, as appears from the record, is cleaning out, straightening and improving the channel of the Sangamon river from its mouth through several sections of land, and all of the proposed work is to be done in territory outside the boundaries of the district—that is, between the west boundary of the district (which also appears to be the west boundary of the Mason and Cass River Drainage District) and the mouth of the Sangamon river. The petition for the establishment of the district shows that it was to be organized as an outlet district under the provisions of section 65a of the Levee Drainage act, which provides: "When any river or other stream or watercourse in this State constitutes the common outlet for two or more drainage districts heretofore or hereafter organized under any of the laws of this State, and also constitutes the outlet for the drainage of lands not organized into a drainage district, and when it will be a benefit to the lands included in said drainage districts and to said lands not so included but having said river or watercourse as the outlet for drainage, for agricultural or sanitary purposes, that said river, watercourse or other stream or any portion thereof constituting such common outlet be deepened, widened or otherwise improved or that the channel thereof be changed or straightened, an outlet drainage district may be organized

in the manner provided in this act for the organization of drainage districts, and all lands benefited by so deepening, widening or otherwise improving or by changing or straightening the channel of such river or watercourse may be included within the boundaries of such outlet drainage district, and it shall not constitute any objection to the inclusion of any lands in such outlet drainage district that said lands had been theretofore included in a drainage district organized under the general provisions of this act, or under any other law of this State." (Cahill's Stat. 1931, chap. 42, sec. 65a, p. 1146; Smith's Stat. 1931, chap. 42, sec. 65a, p. 1159.)

It is contended by appellants that their demurrers should have been sustained because the records of the county court of Mason county in the proceedings for the organization of the district as set out in the pleas do not show that that court had jurisdiction to establish the district, and for the reason that they do not show that there was any finding by the county court in either its preliminary or final order that lands within the boundaries of two or more drainage districts organized under the laws of this State, as well as lands outside a drainage district, are included in the supposed outlet district, or that the Sangamon river constitutes the common outlet for two or more drainage districts organized under the laws of this State and also constitutes the outlet for the drainage of lands not organized into a drainage district. Appellees reply to this contention by saying that section 65a of the Levee act provides that outlet drainage districts may be organized "in the manner provided in this act for the organization of drainage districts," and that the preliminary order of the county court in the proceedings for the organization of the district contains the findings specified in section 5 of the act and the final order follows the form of order set out in section 16 of the act. Appellees also point out that in the petition for the organization of the district it is alleged that within the boundaries of

the proposed outlet district were embraced lands within three drainage districts and lands not within the boundaries of said three drainage districts, and that the Sangamon river constituted the common outlet for drainage of the three districts and the other lands.

In proceedings for the organization of a drainage district the county court derives its jurisdiction solely from the statutes, and in support of its jurisdiction no presumptions are indulged but every fact necessary to such jurisdiction must affirmatively appear from the record. (*People* v. *North Fork Drainage District,* 331 Ill. 68; *Maulding* v. *Skillet Fork Drainage District,* 313 id. 216; *People* v. *Wells,* 291 id. 584.) Before an outlet drainage district may be established by a county court under the provisions of section 65*a* of the Levee Drainage act it must appear that a river, stream or watercourse constitutes the common outlet for drainage of two or more drainage districts organized under the laws of this State and also constitutes the outlet for drainage of lands not included in a drainage district, and that the deepening, straightening, widening, changing or improving of such river, stream or watercourse will be a benefit to the lands included in such drainage districts and to the lands not so included. From the records of the county court of Mason county in the proceedings to establish the district in question, as alleged and set up in appellees' pleas, it does not appear, except by the allegations of the petition for the organization of the district, that the Sangamon river constitutes a common outlet for drainage for two or more drainage districts and land not included in a drainage district. There is no such finding in either the preliminary order or the final order of the court entered in the proceedings for the organization of the outlet district. It is true that the findings in the orders of the court are such as are specified in other sections of the statute as being necessary to be made by such orders in case of proceedings for the organization of an ordinary drainage dis-

trict under the statute. It is also true that the findings specified in those other sections of the statute to be made in case of the organization of an ordinary drainage district are the jurisdictional facts on which the court is authorized to proceed with the organization of such district. Section 65a of the Levee Drainage act was added to that act in 1917, after the other sections had been in force for many years. Section 65a, while it states that outlet drainage districts may be organized under its provisions "in the manner provided by this act for the organization of drainage districts," also sets up as a basis for the organization of an outlet drainage district the requirement that the stream which it is proposed to improve is a common outlet for drainage for lands included in two or more drainage districts organized under the law of this State and for lands not included in a drainage district. Before it can be made to appear that the county court had jurrisdiction to organize an outlet district, the record of the proceedings for the organization of the district should show affirmatively that a river, stream or watercourse constitutes the common outlet for drainage of lands included in two or more drainage districts organized under the laws of this State and for lands not included in a drainage district. There is no such showing in the record of the proceedings in the county court of Mason county for the organization of this outlet district by any finding of the court in any of its orders, and the allegations of the petition, standing alone, cannot be taken as a showing by the record of the existence of such fact.

Appellees also point out that in their first plea it is alleged that flowing through lands of the outlet district there is "a river which constitutes the common outlet of three drainage districts organized under the laws of this State and also constitutes the outlet for the drainage of lands not organized into a drainage district," and also alleged that on the hearing before the county court on the petition for the organization of the outlet district appellees presented evi-

dence that the Sangamon river formed the common outlet for three drainage districts organized under the laws of this State and also constituted the outlet for drainage of lands not organized into a drainage district. These allegations of this plea do not serve to make it a good one, because the question of the jurisdiction of the county court must be determined from the records of that court made in the proceedings for the organization of the district. (*People* v. *North Fork Drainage District, supra; People* v. *Hartquist,* 311 Ill. 127.) Since the pleas filed by appellees set up the record made in the county court in the proceedings for the organization of the outlet district and the record does not show the existence of, or that the county court found or determined, a fact which was a prerequisite to the creation and establishment of an outlet drainage district, the pleas did not show the outlet drainage district had been legally created and organized.

Appellees contend that, even though the record of the county court of Mason county in the proceedings for the organization of the outlet district as set out in the pleas fails to show that that court had jurisdiction to create and establish the district, their second and third pleas set up facts which show the proceeding is one for the private benefit of the relators, in which the public has no more than a theoretical interest, and that the relators have been guilty of *laches* and are estopped from questioning the validity of the organization of the district. The allegations of the second and third pleas relied upon as showing *laches* and estoppel have been above noted. It is not alleged that any work has been done under the contract let for the proposed work of the district or that any bonds of the district have been executed or delivered to purchasers. A drainage district is a public corporation. The Attorney General or State's attorney may file an information on behalf of the people to question the exercise of corporate powers by a district, and neither lapse of time nor the conduct of a relator consti-

tutes a bar to the proceeding where it does not appear that the information is filed for his private and exclusive benefit. (*People* v. *Anderson*, 239 Ill. 266.) In the absence of estoppel the accumulation of costs in carrying out the illegal proccedings is not ground for denying relief under an information in the nature of *quo warranto*. *People* v. *Swearingen*, 273 Ill. 630.

There are other questions presented for decision in this case, but we do not consider it necessary to pass upon the merits of such questions as it is not probable that they will again arise on remandment of the cause.

The circuit court erred in overruling the demurrers to the pleas filed by appellees, and the judgment of the court is reversed and the cause is remanded, with directions to sustain the demurrers of appellants to the pleas filed by appellees.

*Reversed and remanded, with directions.*

Mr. JUSTICE ORR, dissenting.