AIRTEX PRODUCTS, INC., Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 72-80;

Fifth District—October 12, 1973.

G. MORAN, P. J., dissenting in part.

Arvey, Hodes & Mantynband, of Chicago, (Charles J. O'Connor and Lawrence C. Rubin, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, (Larry R. Eaton, Assistant Attorney General, of counsel,) for appellees.

Mr. JUSTICE CREBS delivered the opinion of the court:

This is a petition to review an order of the respondent, Pollution Control Board, imposing a fine of $11,000 on petitioner, Airtax Products, Inc. The order was the result of an enforcement action brought by the Environmental Protection Agency before the Pollution Control Board, an administrative agency, for alleged violations of the Environmental Protection Act and certain regulations adopted by the Pollution Control Board.

The Board found the petitioner guilty of violating section 12(a) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, sec. 1012(a)), which provides:

"No person shall: (a) cause or threaten or allow the discharge of contaminants into the environment in any State so as to cause or tend to cause water pollution in Illinois, either alone or in combination with any matter from other sources, or so as to violate regulations or standards adopted by the Pollution Control Board under this Act; * * *."

Petitioner was also held to have violated Illinois Sanitary Water Board Rules and Regulations SWB-5, Article I, Rule 1.01, which provide:

"Any person, firm or corporation engaged in manufacture or other process, including deactivation of processes, in which cyanides or cyanogen compounds are used shall have each and every room, where said compounds are used or stored, so constructed that none of said compounds can escape therefrom by means of building sewer, drain or otherwise directly or indirectly into any sewer system or watercourse."

Agents of the Environmental Protection Agency took water samples

on May 4 and May 14, 1971, and stated that on both dates petitioner discharged cyanide into the storm sewer of the City of Fairfield. One inspector testified that samples taken on May 4 from a street drain and from a storm sewer showed 12.0 and 4.3 milligrams cyanide per liter, respectively. Another inspector testified that three samples taken May 14 from the junction of a storm sewer and a creek, a street drain, and a tributary to a creek near Fairfield, showed readings of 1.5 ppm, .3 mg/1, and .08 ppm cyanide respectively.

SWB-5, Article I, Rule 1.02 provides:

"On application by a municipality to and approval by the Sanitary Water Board, limited amounts not to exceed two (2) milligrams per liter, may be permitted to be discharged to a municipal sewer system and sewage treatment works, when determined it would not be detrimental to public health or municipal sewage treatment works operations or which would not pollute any lake, river, stream, drainage or roadside ditch or other watercourse."

On October 27, 1967, petitioner received a copy of a letter from the Sanitary Water Board. The letter was addressed to the Mayor and City of Fairfield, where petitioner's two factories were located, and advised that cyanide was found in the storm sewer and that enforcement action would be directed against the city. On December 15, 1967, petitioner was advised by letter from the Sanitary Water Board, copy to the city, that no discharge containing cyanide was permitted. Regulation SWB-5 was enclosed. The letter outlined the permit procedure to be followed in order to discharge cyanide into the city sanitary sewer system.

In 1969 petitioner applied to the State to discharge cyanide in the Fairfield sanitary sewer system. Petitioner was advised that it should apply for a permit to the city, which would then apply to the State for a permit. On July 25, 1969, petitioner formally requested authority from the city to connect to the sewer system and asked the city to obtain the necessary permit from the Sanitary Water Board. On August 5, 1969, the Sanitary Water Board wrote to the city and petitioner advising them both of the requirements to obtain a permit under regulation SWB-5. The letter stated that no construction or alterations should be started until the plans had been approved by the Sanitary Water Board.

In December of 1969 petitioner submitted its proposed plans for treating and disposing of its cyanide to engineering consultants for the City of Fairfield, but the city did not file an application because the consultants felt that the plans lacked detail. Petitioner was not informed that its plans were unsatisfactory.

The engineering consultants completed a study which revealed that

the city's treatment plant would have to be enlarged in order to handle all of petitioner's industrial waste. One of the consultants stated that cyanide was considered toxic to the organisms that break down wastes in the sewage plant and that once the organisms were affected, only time could repair the damage.

Petitioner was fined under section 42 of the Environmental Protection Act (Ill. Rev. Stat. 1971    ch. 111½, sec. 1042), which provides:

"Any person who violates any provision of this Act, or any regulation adopted by the Board, or who violates any determination or order of the Board pursuant to this Act, shall be liable to a penalty of not to exceed $10,000 for said violation and an additional penalty of not to exceed $1,000 for each day during which violation continues, which may be recovered in a civil action, and such person may be enjoined from continuing such violation as hereinafter provided."

■■ Petitioner contends first that the imposition of a discretionary penalty by an administrative agency is an exercise of judicial authority and violative of the separation of powers doctrine of Section 1 of Art. II of the Illinois Constitution of 1970. We have so held in *Southern Illinois Asphalt Co. v. Environmental Protection Agency*, 15 Ill.App.3d 66, and we make the same ruling here.

Petitioner's second contention is that Sanitary Water Board Regulation SWB-5 is unconstitutional and void, as being contrary to the statute, constituting an unlawful delegation of legislative authority, and taking property without due process.

■■ Regulation SWB-5 is not contrary to the Environmental Protection Act. Section 39 of the Act (Ill. Rev. Stat. 1971, ch. 111½, sec. 1039) provides:

"When the Board has by regulation required a permit  *  *  * it shall be the duty of the Agency to issue such a permit (upon proof that the facility will not cause a violation of the Act  *  *  *. In granting permits the Agency may impose such conditions as may be necessary to accomplish the purposes of this Act  *  *  *. If there is no final action by the Agency within 90 days after the filing of the application for permit, the applicant may deem the permit issued."

Petitioner contends that because Regulation SWB-5, Article I, Rule 1.02 requires the municipality to file the application, the above provision of the Environmental Protection Act is contravened.

Petitioner's contention is without merit. When the municipality applies for a permit, section 39 is triggered into action. What petitioner really disputes is the involvement of the city in the application procedure. But

it is the municipality's sewer system into which petitioner wishes to dump its cyanide, and the municipality is equally liable under the Environmental Protection Act if cyanide is found therein. Since it is the city's sewer system which carries the cyanide, it is reasonable to require that the city obtain a permit.

Further, section 39 itself provides that the Environmental Protection Agency may impose such conditions as may be necessary to accomplish the purposes of the Act. One of those purposes is to maintain the purity of the waters of this State. Since it is known that cyanide is destructive of sewage treatment plants, which function to maintain the purity of water, it is a reasonable condition necessary to maintain the purity of the water to require disposers of cyanide to work in close cooperation with the owners of those plants.

Cases cited by petitioner on this point are not applicable because they deal with delegation of powers to municipalities, and not administrative agencies.

■■■ Regulation SWB-5 is also criticized by petitioner as unconstitutional in delegating legislative authority unlawfully. Petitioner states that the regulation fails to state who shall make the determination, when it shall be made, or the standards and conditions to be utilized. It is a matter of construction, and a simple one at that, that the Environmental Protection Agency is to make the determination. There is an initial presumption in favor of the constitutionality of a statute; and this presumption includes the provisions of the Sanitary Water Board Act: all doubt and uncertainty as to its constitutionality should be resolved in favor of its validity if it can be upheld by a reasonable construction although a contrary construction is equally available. (*North Shore Post No. 21 of American Legion v. Korzen*, 38 Ill.2d 231, 230 N.E.2d 833 (1967); *People v. Wilson Oil Co.*, 364 Ill. 406, 4 N.E.2d 847 (1936).) Since the municipality, the only other likely party to be approving the permit, is itself mentioned in the regulation as applicant, a contrary construction is not even available.

The determination is to be made within 90 days, as required by section 39 of the Act.

The standards and conditions to be utilized are as definite as can be expected in the context: "detrimental to public health, or the municipal sewage treatment works operations or which would not pollute * * *" is no more indefinite than the standard upheld in *Hill v. Relyea*, 34 Ill.2d 552, 216 N.E.2d 795 (1966): "to grant absolute discharge or a conditional discharge to a patient as the welfare of such person and of the community may require." Here, as there, the Environmental Protection Agency can determine more understandingly and advantageously when

cyanide discharges are detrimental to public health, or to the city's sewage treatment works, or when they would not pollute. The words of the court in *Hill*, at 556, are equally applicable here: "The nature of the objectives to be achieved and the problems to be solved negate the usefulness of setting more precise standards."

■■■ Petitioner also complains that neither the phrase "detrimental to public health" nor the phrase "municipal sewage treatment works operation" is defined. But, as the court stated in *City of Chicago v. Ben Alpert, Inc.*, 368 Ill. 282, 288, 13 N.E.2d 987, 990 (1938):

> "Where words assailed, taken in connection with the context, are commonly understood, their use does not render a statute invalid. [Citation.] Moreover, the legislature is not required to define words in common and daily use. [Citation.]"

Both phrases about which petitioner complains are commonly understood and in daily use; and it would be unnecessary for the Environmental Protection Agency to indulge in long and intricate definitions of their meaning.

■■ Petitioner finally contends that SWB-5 is unconstitutional because property is taken without due process. Cases cited by petitioner to support its contention that the right to connect to the Fairfield city sewer system is a property right which cannot be divested are all cases dealing with property rights acquired after paying a special assessment levy. Even after a special assessment, the rule to be applied is that the right to connect to a sewer system of a municipality is subject to reasonable regulations imposed by the State and city. (*Frank v. State Sanitary Water Board*, 33 Ill.App.2d 1, 178 N.E.2d 415 (1961).) It was not unreasonable for the city to require that petitioner treat the effluent prior to discharging it into the municipal sewage treatment operations because the introduction of too much cyanide into the operation could do damage that "only time could repair." (A. 87) Since petitioner did not even take the primary step of having its plans for a pretreatment operation approved by the Sanitary Water Board, it is in a poor position to be assailing the SWB-5 as unreasonable. If petitioner had submitted plans, acquired approval, and constructed a predischarge facility which could meet the standards of Rule 1.02, then it would have reason to be asserting a property right here. But as it is, there is no basis to assume any property right.

Petitioner next contends that the agencies of the State of Illinois are estopped from bringing an enforcement action because of the arbitrariness in requiring petitioner to deal with both the city and the Environmental Protection Agency. Again, the *Frank* case, *supra*, relied upon by the petitioner to support this point, can be distinguished on the basis

that it dealt with a situation in which the property owner had paid a special assessment levy.

Petitioner made no good-faith effort to see that the permit required by Rule 1.02 was obtained. Petitioner has done nothing which entitles it to connect into the city's sewer's works; so there has been no reason for the city to apply for the permit. This is not a case of capriciousness where the city and the Agency are playing fast and loose with a vested right which petitioner has acquired. Rather, it is a case where petitioner has failed to take even the first step in complying with the law.

Petitioner next contends that the order of the board is unsupported by required findings of fact and conclusions of law and is therefore void. Cases cited by the petitioner to support its position all deal with the need to make written findings of fact, and to that extent are inapplicable because the first nine pages of the Board's order consist of findings of fact and conclusions of law.

Petitioner might be contending that the Board did not make specific findings about certain factors that the statute mentioned should be considered by the Board in arriving at an order. Examples include the reasonableness of the discharge of cyanide, the character and degree of injury to, or interference with, protection of health, general welfare, and physical property of the people, and the technical practicability and economic reasonableness of reducing or eliminating the discharge. Although all of these matters are discussed in general terms in the Board's order, it seems that petitioner is claiming error in that specific findings of fact and conclusions of law were not made in regard to each one separately. The law does not require such specificity. The principle is well stated in *United Cities Gas Co. v. Commerce Com.*, 47 Ill.2d 498, 501, 265 N.E.2d 608, 610 (1970):

> "We have held, however, that it is not necessary to make a particular finding as to each evidentiary fact or claim. (*Chicago Junction Ry Co. v. Illinois Commerce Commission*, 412 Ill. 579; *Chicago, Burlington & Quincy RR Co. v. Commerce Commission ex rel. Brotherhood of Railroad Trainmen*, 364 Ill. 213.)"

The court in *Ford v. Environmental Protection Agency*, 9 Ill.App.3d 711, 292 N.E.2d 540 (1973), used the above principle when confronted with the assertion that the Board had not made specific determinations in considering the mitigating circumstances listed by the Act. The principle is equally applicable here.

Petitioner last contends that the order of the Board was contrary to law and unsupported by the evidence. This point is easily disposed of by recalling that since petitioner neither sought nor received the permit required by Rule 1.02, the zero effluent standard of Rule 1.01 was in effect

at the time of the violations. That the violations occurred is clearly supported by the evidence, so petitioner's contention is without merit.

For the foregoing reasons the order of the Pollution Control Board is reversed in so far as it assesses a fine against Airtex Products, Inc. and is otherwise confirmed.

Confirmed in part and reversed in part.

JONES, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting in part:

I dissent from that portion of the majority opinion which holds section 42 of the Environmental Protection Act unconstitutional. I concur with the remainder of the opinion.