CENTRAL ILLINOIS PUBLIC SERVICE CO., Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Fifth District No. 74-182

Opinion filed February 2, 1976.—Supplemental opinion filed upon denial of rehearing March 25, 1976.

JONES, J., dissenting.

Sorling, Catron and Hardin, of Springfield (Thomas L. Cochran and Patrick V. Reilley, of counsel), for petitioner.

William J. Scott, Attorney General, of Springfield (Larry R. Eaton and Fredric Benson, Assistant Attorneys General, of counsel), for respondents.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

This is a petition for review, pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*), of a decision of the Illinois Pollution Control Board (hereinafter Board) adopted March 28, 1974, affirming a denial of an operating permit by the Environmental Protection Agency (hereinafter Agency) and of a supplemental opinion and order of the Board of May 23, 1974, denying peti-

tioner's motion to reconsider and vacate the March 28, order or, in the alternative, to permit a rehearing.

Petitioner is an Illinois public utility engaged in the operation of electric generating plants, electric transmission lines and distribution systems for the production, distribution and sale of electric energy in Illinois.

On June 24, 1962, the Illinois Commerce Commission granted petitioner a certificate of public convenience and necessity to complete, operate and maintain a steam electric generating plant located south of Coffeen, Illinois, with an impounding dam and an area for the accumulation and storage of water to be used in connection with the operation of the plant. Coffeen Lake was created by the construction of an earthen dam over McDavid Branch Creek, a tributary of the East Fork of Shoal Creek, which eventually flows into the Kaskaskia River. The lake was designed to dissipate heat from water discharged from the power plant into the lake. The lake also serves as a final decontaminating and settling area for overflow discharge from an ash storage pond, which contains ash that results from the combustion of coal in the boilers.

On May 7, 1973, petitioner made application to the Environmental Protection Agency for an operating permit for its lake at the Coffeen power plant, using the Agency's form for treatment works and wastewater sources. The application contained information regarding the water discharged from Coffeen Lake over the dam site; however, the Agency denied the application because plaintiff did not submit information concerning the discharges into Coffeen Lake.

On September 6, 1973, petitioner filed with the Illinois Pollution Control Board a petition for a hearing to contest the denial of the permit by the Agency. A hearing was held on December 7, 1973, and on March 28, 1974, the Board ruled that the Agency could regulate the discharges from petitioner's plant into Coffeen Lake. Subsequently, petitioner filed a motion to reconsider and vacate the March 28, order or, in the alternative, for a rehearing. On May 27, the Board filed a supplemental opinion and order denying that motion, holding that Coffeen Lake was a water of the State and subject to regulation. Petitioner then filed this petition for review.

Petitioner first argues that the legislature did not and could not have intended to grant to the Pollution Control Board the power to regulate any accumulation of nonnavigable water on private property. The language of the governing statutes, however, indicates otherwise.

The public policy of the State of Illinois with regard to pollution was declared in the constitution "to provide and maintain a healthful environment for the benefit of this and future generations." (Ill. Const.

1970, art. XI, §1.) The General Assembly, by enactment of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1001 *et seq.*), declared the public policy of the State of Illinois with reference to water pollution. Under Title III of the Act, dealing with water pollution, the General Assembly stated its purpose as follows:

> "[T]o restore, maintain and enhance the purity of the waters of this State in order to protect health, welfare, property, and the quality of life, and to assure that no contaminants are discharged into the waters of the State * * *." (Ill. Rev. Stat. 1973, ch. 111½, par. 1011(b).)

Section 3(n) defines water pollution as follows:

> "[S]uch alteration of the physical, thermal, chemical, biological or radioactive properties of any waters of the State, or such discharge of any contaminant into any waters of the State, as will or is likely to create a nuisance or render such waters harmful or detrimental or injurious to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate uses, or to livestock, wild animals, birds, fish, or other aquatic life." (Ill. Rev. Stat. 1973, ch. 111½, par. 1003(n).)

Section 3(o) states that " 'waters' means all accumulations of water, surface and underground, natural, and artificial, public and private, or parts thereof, which are wholly or partially within, flow through, or border upon this State." (Ill. Rev. Stat. 1973, ch. 111½, par. 1003(o).) Under the Act the Pollution Control Board was granted the power to make rules and regulations in furtherance of Title III. (Ill. Rev. Stat. 1973, ch. 111½, par. 1013.) Thus, the legislature has conferred authority and discretion upon the Board for the execution of the law.

■■ The Illinois Water Pollution Control Rules regulate the issuance of permits for the construction, modification and operation of treatment works, sewers, wastewater sources and other discharges. (Illinois Pollution Control Board Rules and Regulations, ch. 3, Part IX (March 7, 1972).) The application of these rules is not limited to one who discharges contaminants into waters of this State. *A. E. Staley Manufacturing Co. v. Environmental Protection Agency*, 8 Ill.App.3d 1018, 290 N.E.2d 892 (1972).

Illinois Water Pollution Control Rule 104, enacted under the authority to make rules and regulations in furtherance of Title III, granted the Pollution Control Board by section 13 of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1013), states:

> " 'Waters' means all accumulations of water, surface and underground, natural, and artificial, public and private, or parts thereof,

which are wholly or partially within, flow through, or border upon the State of Illinois, except that sewers and treatment works are not included *except as specifically mentioned;* provided, that nothing herein contained shall authorize the use of natural or otherwise protected waters as sewers or treatment works except that in-stream aeration under Agency permit is allowable." (Emphasis added.)

The basic rules for the issuance of permits for the construction, modification and operation of treatment works, sewers, wastewater sources and other discharges are specifically provided for in Part IX. It is the application of these rules to petitioner's lake with which we are here concerned.

Rule 903(a), now Rule 953(a), prohibits the use or operation of existing treatment works after December 31, 1972, without an operating permit issued by the Environmental Protection Agency (with three exceptions not applicable). Rule 921(a), now Rule 962(a), states that the Agency is prohibited from granting an operating permit (with one exception not applicable) unless the applicant submits adequate proof that the treatment works, sewer or wastewater source will be constructed, modified, or operated so as not to cause a violation of the Environmental Protection Act or the Illinois Water Pollution Control Rules.

A similar issue was raised in *A. E. Staley Manufacturing Co. v. Environmental Protection Agency,* 8 Ill. App. 3d 1018, 290 N.E.2d 892 (1972), which involved an appeal by one adversely affected or threatened by a rule or regulation of the Illinois Pollution Control Board. The petitioner owned and operated a soybean and food processing plant and, in conjunction therewith, owned and operated more than one mile of sewer lines located wholly within the boundaries of its private property. The contents of the sewer, containing treated and untreated materials, were discharged into the sanitary sewer owned and operated by the Decatur Sanitary District, which operated a modern sewage treatment works and discharged its effluent into the Sangamon River. Petitioner contended that the authority of the Illinois Pollution Control Board is limited by the Illinois Environmental Protection Act to the control of contaminants discharged directly into the waters of the State and specifically that the Board does not have the authority to control discharges into sanitary sewers which are tributary to a sanitary treatment plant.

Referring to section 904 (Operating Permits: Existing Sewer Systems) of the Illinois Water Pollution Control Rules, the court stated:

This section is apparently applicable regardless of whether the sewer is privately-owned and is located entirely on private prop-

erty and irrespective of whether it discharges its effluent into a municipally-operated sanitary sewer rather than into the waters of the State." (8 Ill. App. 3d 1018, 1020-21, 290 N.E.2d 892, 894.) In holding that the Pollution Control Board is reasonably required to exercise some supervision over the sewers of the plaintiff in order to perform the duties imposed upon it by the legislature in the Environmental Control Act, the court stated:

"There is a realistic and practical nexus between controlling what flows into a sewer treatment plant and what flows out of that plant and pollutes the waters of the State. * * * The efficiency, sufficiency, adequacy and capacity of a specified sewer treatment plant are obviously controlled and patently affected by what goes into such plant. In such manner only, it would seem, can the legislative declaration contained in par. 1011 assure that no contaminants are discharged into the waters without being given the degree of treatment or control necessary to prevent pollution." (8 Ill. App. 3d 1018, 1021, 290 N.E.2d 892, 894-895.)

This reasoning is equally applicable to the discharges into Coffeen Lake.

Rule 911(a)(1), now Rule 957(a)(1), of the Illinois Water Pollution Control Rules requires the applicant for an operating permit to submit "[a] complete description of the volume and nature of the wastewater *influent* and effluent to be transported, treated or discharged * * *." (Emphasis added.) The Environmental Protection Act is designed to control pollution irrespective of its source. The Pollution Control Board is reasonably required to exercise some supervision over petitioner's Coffeen Lake in order to perform the duties imposed upon it by the legislature in the Environmental Protection Act.

Petitioner raises a number of arguments concerning the constitutionality of the Act and Rules promulgated thereunder. The respondent contends that a hearing to contest the denial of a permit by the Environmental Protection Agency is not a proper proceeding in which to challenge the constitutionality of water rules promulgated by the Illinois Pollution Control Board. The respondent's first argument is that the agency is restricted in the permit-issuing phase to the question whether or not the applicant's discharges meet certain standards. The respondent argues further that because of the restricted nature of the proceedings before the Agency, the petitioner is limited in the hearing phase to the determination of whether the Agency acted incorrectly in interpreting or applying the rules.

The respondent cites sections 29 and 41 of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, pars. 1029, 1041) as authority for the proposition that the constitutionality of the regulation is a sepa-

rate and distinct issue from the permit denial hearing provided for in section 40 of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1040). Neither of these sections, though, precludes other methods for challenging the constitutionality of the Board's rules and the respondent has not directed us to any cases which have limited such actions to the procedures contained within the Act. Section 29 merely states, "Any person * * * may obtain determination of the validity or application of such a rule or regulation by petition for review under Section 41 of this Act." Section 41 makes use of a similar "may" clause when it states a party "may obtain judicial review" of a Board hearing or final action. It is our opinion that had the legislature intended these sections to be exclusive remedies to challenge the constitutionality of the Board's rules, it would not have used the words "may obtain." In addition there is no section within the Act which provides that the remedies are limited to those set forth within the Act. Furthermore, there is no indication in the record that petitioner was a party to any of the hearings at which the contested water rules were adopted.

■■ The respondent also cites section 28 (Ill. Rev. Stat. 1973, ch. 111½, par. 1028) establishing the procedure for the adoption, amendment or repeal of Board regulations. Without anything more persuasive we cannot conclude that this was meant to preclude other methods for challenging the constitutionality of a rule or regulation.

■■ The respondent argues in the alternative that, even if we should decide that permit denial hearings are proper proceedings in which to challenge the constitutionality of Board rules, this particular hearing was not the proper forum in which to make the challenge. The respondent cites Board Procedural Rule 502(a)(4) as authority for limiting the matters which may be considered by the Board in a denial hearing. It is the respondent's contention that to raise the constitutionality of the water rules, the petitioner would have to seek a permit for its discharges into Coffeen Lake rather than a permit for the discharges from the lake as is the case here. Rule 502(a)(4), though, permits a petitioner to raise "such other matters as may be necessary to demonstrate that the activity for which the permit is sought will not cause a violation of the Act or of the Regulations." We are of the opinion that Rule 502(a)(4) does not preclude the consideration of the constitutionality of the water rules as they affect discharges into Coffeen Lake because these discharges are an integral part of the activity for which the permit is sought. As such it comes within the meaning of the words "such other matters" in Rule 502(a)(4).

We now turn to the constitutional questions raised by petitioner. Petitioner attacks the definition of "waters" that appears in section 3(o)

of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1003(o)) and in the Water Rule 104. Petitioner contends that the attempt to subject to regulation traditionally nonpublic waters and to restrict riparian rights constitutes the taking of personal property without due process of law or without just compensation.

In *Cobin v. Pollution Control Board,* 16 Ill. App. 3d 958, 307 N.E.2d 191 (1974), an attack was made on the constitutionality of the power granted to the Pollution Control Board under the provisions of the Illinois Environmental Protection Act to issue cease and desist orders. Petitioner's argument was that such power was violative of the constitutional prohibition against the taking or damaging of property without compensation. (U.S. Const., amend. XIV; Ill. Const. 1970, art. 1, §§2 and 15.) Respondent argued that the police power of the State to secure the health and welfare of its citizens justified the grant of power. Respondent also cited the public policy of Illinois declared in the Illinois Constitution of 1970, article 11, section 1, quoted above. This court stated:

> "[The] apparent conflict of constitutional statements has been resolved by the well-settled rule in Illinois that rights guaranteed by article I, paragraph 15 are subordinated to the interests of public welfare as expressed through the exercise of the police power." 16 Ill. App. 3d 958, 969, 307 N.E.2d 191, 199.

The court cited with approval *A. E. Staley Manufacturing Co.,* which held that the exercise of the police power may constitutionally require individuals to expend funds in the interest of public health and welfare. In *Cobin,* we continued by noting that the distinction between the water rules and condemnation under eminent domain is that "under the latter doctrine, private property is appropriated for public use, while under the [former] the use and enjoyment of the property by its owner is merely regulated by laws enacted to protect the general health and welfare." (16 Ill. App. 3d 958, 970, 307 N.E.2d 191, 199.) As in *Staley,* where regulation of petitioner's privately owned sewers was held reasonably required to effectuate the purposes of the Act, regulation of Coffeen Lake as other bodies of water which may fall within section 3(o) is likewise necessary. The Act is designed to control pollution irrespective of its source. Applying the broad definition of "waters" in this instance to Coffeen Lake does not constitute the taking of personal property but rather only regulates its use; therefore, petitioner's property has not been taken without due process of law or just compensation.

Petitioner directs our attention to *Turner v. Big Lake Oil Co.,* 128 Tex. 155, 96 S.W.2d 221 (1936), to support its position that a legislature

is without power to regulate water accumulations on private property. This decision, however, is readily distinguishable. That case involved a private action for damages for injury to property occasioned by the escape of salt from ponds constructed by defendants in the operation of oil wells. The court held that, in light of common law, Mexican civil law, and the language of a Texas statute, the ponds were not public waters because the legislature was "without power to take it from him or to declare it public property * * *." The enforcement of the Illinois Act and water rules does not constitute a *taking* of petitioner's property; rather it constitutes a regulation reasonably related to legitimate State interests as enunciated in the constitution and statutes.

Petitioner argues that the water leaving Coffeen Lake meets the standards set by the Board and, since the record is devoid of any showing of potential harm to anyone, the purpose of the Illinois Environmental Protection Act is not furthered by regulation of Coffeen Lake; but, rather, petitioner is being prevented from operating a cooling lake constructed with authority from the Illinois Commerce Commission. Petitioner urges that the Illinois water rules influent standards are not reasonably related to the goals sought to be obtained therein and thereby constitute the taking of private property without due process of law or without just compensation. The issue before the court, however, is a narrow one: Can the Board require the submission of effluent data of discharges from petitioner's plant into Coffeen Lake? We are not called upon to decide the reasonableness of particular effluent standards or any attempted control or limitation of any discharge into the Lake.

In *Staley*, the court determined that effective administration of the Act required jurisdiction over private sewers to determine whether or not the treatment plant which receives the effluent is adequate to provide that degree of treatment or control necessary to prevent water pollution. The jurisdiction over private sewers was in the form of rules which prescribe and restrict the types, concentrations and quantities of contaminants which can be discharged into such sewer systems. Illinois Water Pollution Control Rules 701-703.

The Environmental Protection Act states as follows:

"It is the purpose of this Act * * * to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." Ill. Rev. Stat. 1973, ch. 111½, par. 1002(b).

Section 11 of the Act states that it is the purpose of Title III to

"restore, maintain and enhance" the purity of the waters of this State. Section 13 of the Act grants the Board broad authority to set effluent standards. Ill. Rev. Stat. 1973, ch. 111½, pars. 1011, 1013.

In *Airtex Products, Inc. v. Pollution Control Board*, 15 Ill. App. 3d 238, 303 N.E.2d 498 (1973), this court held that requiring petitioner to treat effluents prior to discharge into a municipal sewage treatment plant was not an unconstitutional taking of private property without due process of law. Since the petitioner in *Airtex* had not submitted its plan for a pretreatment operation to the Sanitary Water Board, we held that petitioner was in a poor position to attack the regulation in question.

■■ Here, petitioner did submit an application for an operating permit for its treatment works; however, the application was incomplete, lacking information on influents to be "transported, treated or discharged." (Illinois Water Pollution Control Rule 911(a)(1), now Rule 957(a)(1).) Petitioner failed to comply with the application requirements of the Illinois Water Pollution Control Rules. We feel petitioner is in a poor position to urge an unconstitutional taking of its property. In light of the distinction between the water rules and condemnation under eminent domain noted above, we hold that to characterize the issuance of influent standards as a taking of property without due process of law would deny the Board effective control in its efforts to effectuate the purposes and goals of the Act.

Petitioner's final constitutional argument is that application of the water rules to the discharges into Coffeen Lake denies it equal protection of the law. Petitioner argues that the Board's announced case-by-case approach in determining what constitutes "waters of the State" runs afoul of the equal protection clause. There is language in the Board's finding and order of March 28, 1974, which could be interpreted to support this position as the order states that a conclusion that all artificial impoundments of water in the State are "waters" under the Act would be "too broad a stroke to take." However, we consider this statement gratuitous as the Board's supplemental opinion and order of May 23, 1974, clarifies that the Board found Coffeen Lake a water of the State under the definition of waters in section 3(o) of the Act and under the definition of waters contained in Rule 104. This supplemental opinion and order further clarifies that the presence or absence of aquatic life in Coffeen Lake was immaterial to the determination that the Lake was a water of the State.

■■■ The fourteenth amendment requires that all persons subject to legislation "'shall be treated alike, under like circumstances and conditions, both in privileges conferred and in liabilities imposed.' (*Hayes v. Missouri*, 120 U.S. 68, 71-72.) The provisions of the Environmental

Protection Act and the regulations of the Board are equally applicable to all persons in Illinois." (*Lloyd A. Fry Roofing Co. v. Pollution Control Board,* 20 Ill. App. 3d 301, 309-310, 314 N.E.2d 350, 357 (1974).) Petitioner has shown no discrimination or abuse of discretion in the Board's application of the Act or regulations. Should a case arise where it appeared that the Board acted in violation of the clear statutory definition in deciding that an accumulation or impoundment of water was not a water of the State, then the proper occasion will arise for the court to address itself to the argument here advanced.

For the foregoing reasons, the decision of the Pollution Control Board is affirmed.

Affirmed.

EBERSPACHER, J., concurs.

Mr. JUSTICE JONES, dissenting:

I respectfully dissent from the majority because in my opinion it affirmatively appears from the record and the findings of the Pollution Control Board, as contained in their opinion and supplemental opinion, that the Board did not have jurisdiction to proceed in this case and that its orders are therefore void.

It is a commanding tenet of administrative law that an administrative agency and its officers may exercise only those powers conferred upon them by statute. (*Pearce Hospital Foundation v. Illinois Public Aid Com.,* 15 Ill. 2d 301, 154 N.E.2d 691; *Trigg v. Industrial Com.,* 364 Ill. 581, 5 N.E.2d 394; *Lambdin v. Commerce Com.,* 352 Ill. 104, 185 N.E. 221; *Skokie Federal Savings & Loan Association v. Savings & Loan Board,* 88 Ill. App. 2d 373, 232 N.E.2d 167.) In *W. F. Hall Printing Co. v. Environmental Protection Agency,* 16 Ill. App. 3d 864, 306 N.E.2d 595, the court commented upon the authority and jurisdiction of the Pollution Control Board as follows:

> "We agree with plaintiffs to the extent that the Board is not authorized by the legislature to determine and proceed against common law nuisances. Rather it must proceed strictly within the authority defined by the Act." (16 Ill. App. 3d 864, 869.)

Where jurisdiction is conferred by statute all facts necessary to the exercise of such jurisdiction must affirmatively appear from the record. (*Illinois Commerce Commission ex rel. East St. Louis, Columbia & Waterloo Ry. v. East St. Louis & Carondelet Ry. Co.,* 361 Ill. 606, 198 N.E. 716; *Lambdin v. Illinois Commerce Com.; People ex rel. Weaver v. Holmes,* 348 Ill. 204, 180 N.E. 780.) There are no intendments in

favor of the jurisdiction of an administrative body. *Michelson v. Industrial Com.*, 375 Ill. 462, 31 N.E.2d 940; *Trigg v. Industrial Com.*

That we are concerned here with a hearing upon an application for a permit would not vary the necessity for the record to affirmatively show that the administrative agency and its officers were acting within the confines of their statutory jurisdiction. The denial of a permit can circumscribe or control a subject activity as effectively as an order that compels some positive action with regard to that activity.

The Board acknowledges in its original opinion that the Environmental Protection Agency could deny petitioner a permit only if Coffeen Lake is a "water of the State." The premise goes to the heart of the jurisdiction of the Agency and the Board and its statement is compelled by the Act.

The original opinion of the Board states: "The Board feels that this question [whether Coffeen Lake is a 'water of the state'] is of such a variable nature that no hard and fast rule can be set down, and so the Board shall decide the case on its facts, and such other cases in the future will be decided on the merits of each case." The opinion then recites the definition of "water" contained in section 3(o) of the Act and Rule 104 of Chapter 3 of the Water Pollution Regulations as—"all accumulations of water, * * * natural and *artificial*, public and *private*, * * * which are wholly or partially within, flow through, or border upon this state." (Their emphasis.)

The Board's opinion then noted that McDavid Branch, though an intermittently flowing stream, and Coffeen Lake, as an accumulation of surface water, fits the definition of "waters" under the Act. But the opinion did not rest its findings on what appears to be the obvious. Rather, *the obvious finding was specifically rejected* in the following language:

> "This interpretation is very broad and would lead to the conclusion that all impoundments of water in the state are 'waters' under the Act. *The Board does not so find. This would be too broad a stroke to take.* [Emphasis supplied.]
>
> The Board must look to the purpose of the Chapter 3 Regulations to determine what impoundments are to be covered. Rule 203, *General Standards,* states that one of the purposes of the standards is to protect the state's waters for aquatic life. As such McDavid Creek [*sic*] was and is a water of the state to be protected. It has its own natural aquatic-based life, and as such falls under Chapter 3."

If the Board had adopted the simple and plainly intended definition of "waters" given in the statute, then unquestionably Coffeen Lake would

be a "water of the State." So would the 900 other impoundments of Water in Montgomery County (the figure is from the record). But, as noted, the obvious was specifically rejected as the basis of the Board's jurisdiction.

The basis upon which the Board found Coffeen Lake to be a water of the State is completely and without foundation in the record and the Board and the Agency are accordingly without jurisdiction. The basis of their jurisdiction, as stated in the opinion, is that McDavid Branch, as enlarged by Coffeen Lake, has its own natural aquatic based life, and as such falls under Chapter 3. However, the only testimony regarding "aquatic based life" in the vicinity came from a witness for petitioner who testified, on cross-examination, that he had seen some frogs while examining McDavid Branch as a possible site for a lake. Frogs, in hundreds of varieties, are found everywhere—in the desert, in trees, in the forest, in the mountains. Patently, the presence of frogs does not establish an "aquatic based life." There was no other or further testimony to establish the presence of an aquatic based life.

The majority find that the supplemental opinion of the Board clarifies that the Board found Coffeen Lake a water of the State under section 3(o) of the Act and Rule 304. But such was not the case. Again, in its supplemental opinion the Board refused to adopt the obvious application, that Coffeen Lake, as an accumulation of surface water, was a water of the State. Rather, the emphasis shifts to McDavid Branch which they stated, without any findings or basis whatever, was, "without a doubt" a water of the State. The assumption is unwarranted for I think there is serious doubt. The record shows that at best McDavid Branch is an intermittent stream. Only cursory testing of this description against the section 3(o) definition of water fortifies the doubt for section 3(o) requires an *accumulation* of water which is within or flows through the State to constitute a water of the State.

"Too broad a stroke," the Board opinion said, to define Coffeen Lake as a water of the State because it is an accumulation of water! Why so? It appears from the record that there are 900 farm ponds in Montgomery County that would perforce be included in the broad "accumulation" definition rejected by the Board. There are doubtless many other non-farm accumulations of water in Montgomery County, not to mention the remainder of the counties in Illinois. If so encompassed by definition, the same environmental regulations and laws would be applicable to farm ponds and other accumulations as to Coffeen Lake. In short, the Board and the Agency would be compelled to treat everyone alike—a concept difficult to fault in our system of constitutional government.

· In view of this setting,· the action of the Board in skirting the obvious application compellingly suggests that petitioner is being accorded treatment that will ·not be imposed upon others and is the hapless recipient of an unconstitutional selection for an enforcement action which surely lies in the offing. By the trite artifice grasped by the Board to ground its jurisdiction in this case, the very fundamental and basic rule of constitutional government, equal treatment before the law, has been crudely and blatantly circumvented. The Board's design for jurisdiction permits it and the Agency to pick and choose whom to target for their permit grants or their enforcement actions. Certainly the legislature did not·intend such and this court should not condone it. ·

## SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. JUSTICE KARNS delivered the opinion of the court:

Petitioner, Central Illinois Public Service Company, seeks a rehearing, alleging various points of error or ambiguity in our opinion. We find the petitioner's arguments of error unfounded but will address ourselves to the question of whether our decision is in the nature of an interlocutory order.

■■ As stated in the opinion, the issue before us is a narrow one: Whether the Board can require petitioner to submit effluent data of dis-charges from petitioner's plant into Coffeen Lake. Our decision is that the Board properly refused to grant an operating permit to petitioner solely because petitioner failed to comply with the application requirements of the Illinois Water Pollution Control Rules. Any discussion of the influent or effluent discharges from petitioner's facility into Coffeen Lake and from said lake in the Board's orders we regard as surplusage, and not part of the Board's decision. This decision, perforce, holds that Coffeen Lake, admittedly an artificial impoundment of water within the State, is a "water of the State" within the statute (Ill. Rev. Stat. 1973, ch. 111½, par. 1003(o)), and, therefore, within the jurisdiction of the Pollution Control Board and subject to its power of reasonable regulation. However, we are not remanding this cause to the Environmental Protection Agency to allow petitioner to file a proper application for a permit, a result which petitioner claims would be an interlocutory order. Petitioner may now wish to submit a complete application ·for a permit; however, that is a decision for it to make, and we consider petitioner's request for ·remand most unusual as the finality of our decision would then depend on petitioner's discretion and judgment. Therefore, the petition for rehearing is denied and the decision of the Pollution

Control Board is affirmed. Petitioner's application for certificate of importance is also denied.

EBERSPACHER, J., concurs.

Mr. JUSTICE JONES, specially concurring:

While I concur with the majority's disposition of the petition for rehearing, I remain of the opinion that the Pollution Control Board was without jurisdiction to proceed in this matter, as I expressed in my dissent.